CHAMPAIGN COUNTY FOREST PRESERVE DISTRICT, Plaintiff-Appellee, v. ROBERT KING, Defendant (Insurance Risk Managers, Ltd., Defendant-Appellant).

Fourth District   No. 4—96—0890

Argued April 29, 1997.—Opinion filed August 14, 1997.

Karen L. Kendall (argued), of Heyl, Royster, Voelker & Allen, of Peoria, and James C. Kearns, of Heyl, Royster, Voelker & Allen, of Urbana, for appellant.

David R. Moore (argued), of Follmer & Moore, of Urbana, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Plaintiff Champaign County Forest Preserve District (District), a public entity, filed a complaint in the circuit court of Champaign

County against defendants Robert King (King) and Insurance Risk Managers, Ltd. (IRM). Plaintiff claimed it had been overcharged for insurance premiums obtained through defendants. IRM filed a motion to dismiss plaintiff's complaint, which the trial court denied. IRM now brings this interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). We are called upon to consider the following questions certified by the circuit court:

"1. Did the Plaintiff act in its public capacity by purchasing liability insurance?

2. Is the Plaintiff asserting a public right in claiming excessive billing in the approximate amount of $20,000 per year for insurance thus enjoying immunization from limitation defenses?"

We answer both questions in the negative.

On November 13, 1995, plaintiff filed a 32-count complaint against defendants, alleging breach of fiduciary duty and breach of agency. Plaintiff claimed it was overcharged for insurance premiums obtained through defendants from 1985 to 1992. Plaintiff further claimed defendants failed to disclose there was comparable coverage available at a lower cost and misled plaintiff into believing it was receiving appropriate insurance limits and coverage with appropriate companies at a fair cost. Plaintiff failed to obtain service of process over King.

On December 6, 1995, IRM filed a motion to dismiss plaintiff's complaint as being barred by the statute of limitations. Attached to IRM's motion was an affidavit of T.O. Dawson, chairman of the board and chief executive officer of IRM. Dawson testified that he reviewed the insurance files of plaintiff and discovered the last time a policy was sold to plaintiff was in 1989. That policy was to run for a period of three years. IRM's motion stated there was no written contract between plaintiff and IRM, and, therefore, the statute of limitations applicable to plaintiff's complaint was five years. See 735 ILCS 5/13—205 (West 1994). IRM asserted that because plaintiff's complaint was not filed until November 13, 1995, the lawsuit was barred.

Plaintiff's response to IRM's motion pointed out that it alleged two different theories in its complaint—breach of fiduciary duty and breach of agency. Plaintiff claimed the counts for breach of fiduciary duty are equitable actions governed by the doctrine of *laches* and that the breach of agency counts are governed by the statute of limitations. However, plaintiff averred that as a governmental body it is immune from the statute of limitations and the application of the doctrine of *laches*. Accompanying the response was an affidavit of John Potts, executive director of the District. Potts testified that insurance premiums were paid to IRM by plaintiff on an annual basis from 1985 to 1992.

IRM filed a reply, asserting that all counts of plaintiff's complaint are subject to the five-year statute of limitations because all counts sought money damages rather than equitable remedies. IRM further stated that plaintiff conceded the last time there were any negotiations between the parties was in 1989, with a three-year policy taking effect at that time.

On June 12, 1996, the trial court denied IRM's motion to dismiss, finding that under *City of Shelbyville v. Shelbyville Restorium, Inc.*, 96 Ill. 2d 457, 451 N.E.2d 874 (1983), plaintiff acted in its public capacity by purchasing liability insurance and asserted a public right in claiming excessive billing for the insurance. Thus, plaintiff enjoyed immunity from limitation defenses. On June 17, 1996, IRM filed a motion to reconsider. In the alternative, IRM requested leave to file an interlocutory appeal pursuant to Rule 308. The court denied the motion to reconsider but granted IRM's request for leave to file an interlocutory appeal and certified the questions now presented to this court.

## I

■■ ■ We first address the issue of whether plaintiff acted in its public capacity by purchasing liability insurance. As a general rule, the statute of limitations will not apply to bar a claim by a governmental entity acting in a public capacity. However, where the entity is acting in a private capacity, its claim may be subject to a limitations defense. *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 472-76, 546 N.E.2d 580, 600-02 (1989); see also *Shelbyville*, 96 Ill. 2d at 464-66, 451 N.E.2d at 877-78. In order to determine if a governmental activity is public or private, courts should consider who would benefit by the government's action and who would lose by its inaction. *Shelbyville*, 96 Ill. 2d at 462, 451 N.E.2d at 877. Three factors must be addressed: (1) the effect of the interest on the public, (2) the obligation of the governmental unit to act on behalf of the public, and (3) the extent to which the expenditure of public revenues is necessitated. *A, C & S*, 131 Ill. 2d at 476, 546 N.E.2d at 602; see also *Shelbyville*, 96 Ill. 2d at 464-65, 451 N.E.2d at 878.

As to the first factor, plaintiff asserts its purchase of insurance directly affected the public. Plaintiff claims it owes certain duties to the citizens of Champaign County such as conservation, education, and recreation. In order to fulfill these duties it was required to maintain certain staff, buildings, grounds, properties, vehicles, tools, and equipment. Thus, it was necessary to purchase insurance to protect its property, employees, and citizens from loss or damage. We disagree.

In *Shelbyville,* a municipality filed suit against a builder to recover money spent to complete and repair streets that the builder failed to construct. The builder asserted the statute of limitations as a bar to the suit. The Supreme Court of Illinois found that construction and maintenance of city streets directly affected the safety of the general public and, hence, the city acted in its public capacity. Therefore, the municipality was immune from the limitations defense. *Shelbyville,* 96 Ill. 2d at 463-64, 451 N.E.2d at 877-78.

*A, C & S* involved a claim by 34 school districts against suppliers and distributors of asbestos-containing materials. The districts sought recovery of costs expended for the removal or repair of the materials found in school buildings. Defendants asserted the statute of limitations. The Supreme Court of Illinois found there was an effect on the general public because the school districts were addressing a significant health concern to children and adults using the buildings. Thus, the supreme court ruled the cause of action was a public one and was not barred by the statute of limitations. *A, C & S,* 131 Ill. 2d at 476, 546 N.E.2d at 602.

Unlike the governmental activities in *Shelbyville* and *A, C & S,* plaintiff's purchase of liability insurance in this case had no effect on the public at large. It did not make the public safer, nor did it reduce the likelihood of injury on plaintiff's property. The insurance was acquired solely for the benefit of plaintiff, not the general public.

The second factor is whether the governmental entity was obligated to act on behalf of the public. In *Stafford v. Bowling,* 85 Ill. App. 3d 978, 407 N.E.2d 771 (1980), the court addressed whether the Department of Labor (Department) was under a duty to provide assistance to employees in the collection of wages from their employers. While the Wage Payment and Collection Act (Ill. Rev. Stat. 1977, ch. 48, par. 39m—1 *et seq.*) provided several different methods by which the Department could assist employees, it granted the Department discretion to choose which method, if any, it should use. Thus, the court held that although governmental assistance was authorized, it was not required. *Stafford,* 85 Ill. App. 3d at 982, 407 N.E.2d at 775.

Similarly, under section 22 of the Downstate Forest Preserve District Act (Act) (70 ILCS 805/22 (West 1994)), each forest preserve district is required to indemnify and protect its commissioners and employees against civil rights damage claims and suits, constitutional rights damage claims and suits, death and bodily injury claims and suits, and property damage claims and suits. However, there is no provision of the Act that requires a forest preserve district to purchase insurance. The Act permits participation by forest preserve

districts in intergovernmental risk management associations or self-insurance pools. 70 ILCS 805/8b (West 1994). Under section 9—103 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/9—103 (West 1994)), a forest preserve district may also elect to purchase insurance or become self-insured. Thus, there were several alternatives plaintiff could have chosen as protection against claims and suits. Accordingly, although plaintiff was authorized to purchase insurance, it was not required to do so.

Regarding the third factor, the extent to which public funds were expended, we note the fact that public funds were used to purchase insurance does not necessarily render it a public act. Otherwise, any use of public funds would always be considered a public act.

In *Shelbyville*, the expenditure was the cost of street construction and repair. In *A, C & S*, the school districts were required to expend large sums of money to remove the asbestos-containing materials. In both cases, the court focused upon the amount of money that was needed and the burden placed on the public treasury. In this case, plaintiff alleges it overpaid its insurance premiums by approximately $20,000 annually. However, there is no evidence indicating the total amount of money plaintiff paid for the insurance. Further, there is no evidence as to plaintiff's overall budget and whether the alleged overpayment amounted to a significant portion of the budget. Without such evidence, we are unable to determine the magnitude of the burden placed upon the public treasury.

■ Based upon our consideration of these factors, we find plaintiff's purchase of insurance was not a public act. This conclusion is further supported by the recent supreme court opinion in *In re Chicago Flood Litigation*, 176 Ill. 2d 179 (1997). There, the court addressed the issue of sovereign or governmental immunity and explained the distinction between governmental and proprietary functions. The court stated, "[i]f the duty or act involves the general public's benefit, rather than a corporate or business undertaking for the municipality's corporate benefit, then the function is governmental." *Chicago Flood Litigation*, 176 Ill. 2d at 191. We believe this reasoning is applicable here. In this case, plaintiff's decision to purchase insurance can only be characterized as a corporate or business undertaking for its own benefit, rather than for the benefit of the general public. Therefore, it would be considered a private act, rather than a public act.

## II

■ We next address whether plaintiff asserted a public right in filing a lawsuit against defendants for excessive insurance premiums.

Whether the statute of limitations is applicable to a governmental entity requires consideration of the right that the entity seeks to assert, namely, whether it is a right belonging to the general public or belonging only to the government or some small, distinct subsection of the public at large. *Shelbyville*, 96 Ill. 2d at 462, 451 N.E.2d at 876-77; *People ex rel. Department of Transportation v. Molter*, 133 Ill. App. 3d 164, 165, 478 N.E.2d 1102, 1104 (1985).

Plaintiff claims the right to assert an action against IRM for excessive premiums is a public right. According to plaintiff, the excessive premiums paid to IRM resulted in less tax revenue available for its other operations and obligations. Thus, the public's right to benefit from this tax revenue was adversely affected.

Plaintiff also asserts there is no requirement that the public funds expended must amount to a significant portion of plaintiff's budget. In *Molter*, the State filed an action against the defendant to recover $1,943 for repairs to a light pole and guardrail. The court noted it should look to the nature of the damage rather than the amount in determining whether the right being asserted is public or private. *Molter*, 133 Ill. App. 3d at 166, 478 N.E.2d at 1104. Plaintiff maintains in the instant case that the nature of the damage is a loss of public tax revenue. Hence, the lawsuit necessarily involves a public right.

We agree this case involves a loss of public tax revenue. However, a consideration of the nature of the damage should address more than simply the source of the funds expended. Any lawsuit filed by a public entity seeking recovery of funds would likely involve the loss of public tax revenue. Rather, courts should also consider the reasons behind the expenditure of funds in determining the nature of the damage.

*Molter* and *Shelbyville* both involved lawsuits to recover money spent on road maintenance. Clearly, both cases involved the loss of public tax revenue. In addition, the expenditure of funds related to overall public safety on the roadways. Therefore, the rights being asserted were considered public. Similarly, in *A, C & S*, the school districts filed a lawsuit for the cost of removing asbestos-containing materials from their schools. Again, the loss of public tax revenue was at issue. Furthermore, the expenditure of funds addressed a significant public health concern. As a result, the rights being asserted by the school districts were viewed as public.

■ In the present case, although plaintiff's lawsuit seeks to recover for the loss of public tax revenue, those funds were not applied toward any public service. The purchase of insurance and the alleged excessive premiums had no effect on the general public. The insur-

ance did not improve the overall safety of the public, nor did it reduce any accidents on plaintiff's property. We hold that plaintiff's purchase of insurance was no different than that of a private citizen. Accordingly, we find plaintiff's lawsuit against defendants for the recovery of excessive insurance premiums to be an exercise of a private right, rather than a public right.

## III

For the foregoing reasons, we answer both questions in the negative.

Questions answered.

McCULLOUGH and COOK, JJ., concur.