# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Stasko v. City of Chicago*, 2013 IL App (1st) 120265

---

| | |
|---|---|
| Appellate Court Caption | CHRISTOPHER STASKO, STEVEN NAGLER, BURTON CITRON, PETER LORENZ, CHARLES JENKINS, PAUL VANRID, AUTOMOTIVE PARTS SERVICE COMPANY, MICHAELINE PIEKARSKI, GREG DIPIERO, ARTHUR, L. KELLY, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket Nos. 1-12-0265, 1-12-1556 cons. |
| Filed | September 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The City of Chicago's amusement tax on the sale or transfer of permanent seat licenses giving license holders the right to purchase tickets for Chicago Bears' home football games was a proper exercise of the city's home rule authority, and the tax is not preempted by section 8-11-6a of the Municipal Code, which states that, with some exceptions, no home rule municipality has the authority to impose a tax on the use, sale or purchase of tangible personal property based on the gross receipts from such sales or the selling or purchase price of said tangible personal property. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-17167; the Hon. Alexander P. White, Judge, presiding. |
| Judgment | Affirmed and remanded. |

Counsel on Appeal

Keith L. Hunt, of Hunt & Associates P.C., George Grumley and Saul Wexler, both of Grumley, Kamin, Rosie & Wexler, and Merle L. Royce and Brad Faber, both of Law Offices of Merle L. Royce, all of Chicago, for appellants.

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellee.

Panel

PRESIDING JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices McBride and Palmer concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs sought a declaration that the City of Chicago (the City) may not collect or assess its amusement tax from or against permanent seat license (PSL) owners based on the sale or transfer of a PSL; an order to the City to disgorge all amusement taxes it collected before judgment in this case on the purchase, sale, or transfer of any PSL, with interest; and an injunction against the City enjoining the imposition, assessment, levy, or collection of the amusement tax on PSLs in the future. On the question of the City's right to collect its amusement tax on the sale of PSLs by either the originator of the PSL (the Chicago Park District) or by an owner of a PSL, the trial court granted summary judgment in favor of defendant. For the following reasons, we affirm the trial court's judgment, and remand.

¶ 2                              BACKGROUND

¶ 3    On June 1, 2009, plaintiffs filed their first amended class action complaint for declaratory judgment and other relief (hereinafter complaint). The complaint sought a declaration that defendant, the City, may not collect, levy or charge an amusement tax based on the purchase or sale of a PSL. The complaint named 10 plaintiffs and alleged that each purchased, and owns or owned, a PSL. The putative class consisted of all present and former owners of PSL seat licenses, including (1) all original PSL purchasers; (2) subsequent transferees; and (3) any other person, entity or organization who has paid the amusement tax, or on whose behalf the tax was paid, or to whom a demand for payment has been made.

¶ 4    The complaint alleged the Chicago Bears Football Club, Inc. (Bears), began selling PSLs in 2002 as a means of financing renovations at Soldier Field. The Chicago Municipal Code (Chicago Municipal Code § 4-156-020 (amended Nov. 19, 2008)) imposes a 9% tax on the

-2-

admission fees or other charges paid for the privilege to enter an amusement (amusement tax). In May 2009, the City sent letters to approximately 1,700 PSL holders stating the amusement tax applies to transfers of PSLs and that the PSL holders may have tax balances due. The complaint alleges the Bears paid the amusement tax on the PSLs it sold, but the City is attempting to collect the amusement tax on subsequent transfer sales of PSLs by original purchasers from the Bears, specifically such sales occurring between 2004 and 2008, by making a demand for payment.

¶ 5       According to the complaint, a "PSL merely confers on the license holder the right to acquire tickets rather than providing the license holder with any right to admittance or to gain entry into an event." The complaint alleged the City may not properly collect an amusement tax from PSL holders for several reasons including, but not limited to, the following: (a) a PSL does not confer any right to enter or to attend any event which constitutes an amusement under the Chicago Municipal Code; (b) PSLs are not admission fees within the meaning of the amusement tax; (c) a PSL is merely a right to purchase tickets and is not a right to gain entry or admittance to any event which constitutes an amusement; (d) the City's attempt to collect the tax is time barred by section 13-205 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/13-205 (West 2008)); and (e) the amusement tax on PSLs is a tax on tangible personal property in violation of section 8-11-6a of the Illinois Municipal Code (65 ILCS 5/8-11-6a (West 2008)) and the City is not authorized to tax the sale or purchase of tangible personal property. Plaintiffs allege the City was never entitled to collect the amusement tax on the original sale or transfer of PSLs, and thus, to the extent the City collected the amusement tax from the Bears on original sales, the City wrongfully collected those taxes.

¶ 6       On June 10, 2009, plaintiffs moved to certify the putative class of plaintiffs.

¶ 7       On June 18, 2009, defendant filed a motion to dismiss the complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2008)). Defendant moved to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)) on the grounds the complaint fails to state a claim for relief. Defendant moved to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)) on the grounds plaintiffs failed to exhaust their administrative remedies under the City's Uniform Revenue Procedures Ordinance (URPO) (Chicago Municipal Code § 3-4-010 *et seq.* (added Nov. 14, 1991)); plaintiffs' claims are invalid as a matter of law because plaintiffs' exclusive remedy is under URPO; even if URPO does not apply, plaintiffs' claims are barred by the statute of limitations and a lack of standing to seek refunds of taxes paid; and, alternatively, plaintiffs' claims are barred by the voluntary payment doctrine. On August 6, 2009 defendant voluntarily withdrew its section 2-619 motion without prejudice and the trial court scheduled briefing and argument on defendant's section 2-615 motion to dismiss.

¶ 8       Plaintiffs filed a motion to strike defendant's section 2-615 motion to dismiss on August 27, 2009, contending that defendant's motion was in effect an answer denying various allegations and stating its reasons for taking contrary positions. On February 8, 2010, the trial court granted plaintiffs' motion to strike defendant's section 2-615 motion to dismiss. On February 11, 2010, defendant filed a second motion to dismiss pursuant to section 2-619 for failure to exhaust administrative remedies. Defendant's motion argued that to the extent plaintiffs challenge the assessment of the amusement tax against future sales of PSLs or to

the past assessment of the amusement tax, URPO provides an exclusive administrative procedure and provides for appeal to the circuit court under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)). On May 6, 2010, the trial court denied defendant's motion to dismiss pursuant to section 2-619 for failure to exhaust administrative remedies for plaintiffs' claims regarding taxes already paid on the original PSL purchases and plaintiffs' claims regarding future PSL sales.

¶ 9      On June 1, 2010, defendant filed its answer and counterclaim to plaintiffs' complaint. Defendant's answer asserted affirmative defenses of (1) failure to exhaust administrative remedies, (2) the statute of limitations as to plaintiffs' claim for refunds, (3) the tax refund claims were not filed by the party who paid the tax, (4) the voluntary payment doctrine, and (5) lack of standing to seek refunds of taxes paid by the Bears. Defendant counterclaimed against "all named plaintiffs and plaintiff class members who did not pay the City's amusement tax *** on the charges they paid to obtain PSLs after 2003." Defendant prayed for a judgment declaring the PSLs are subject to the amusement tax, and a monetary judgment against those who did not pay the tax on the charges they paid to obtain PSLs after 2003. On August 18, 2010, plaintiffs filed a motion to dismiss defendant's counterclaim for failure to state a cause of action because the matter is not appropriate for class certification under section 2-801, any counterclaim is premature, and plaintiffs are not being sued individually. Plaintiffs also argued a lack of personal jurisdiction over the counterdefendants.

¶ 10      On July 16, 2010, the trial court entered an order certifying plaintiffs' class pursuant to sections 2-801 and 2-802 of the Code (735 ILCS 5/2-801, 2-802 (West 2010)). The court's order certifies two classes of plaintiffs: (1) the persons who seek refunds of taxes that the Bears paid to the City in 2002, when PSLs were first issued, and (2) the persons who seek an injunction against any effort by the City to collect taxes on charges paid on subsequent transfers of PSLs.

¶ 11      On July 20, 2010, defendant filed a motion for partial summary judgment on plaintiffs' request for a declaratory judgment that it may not impose the amusement tax on the purchase or sale of a PSL and on plaintiffs' request for a refund of taxes paid on the original sale of PSLs. Defendant attached an affidavit by Karen Murphy, senior director of finance and treasurer for the Bears. Ms. Murphy averred that the Bears began selling PSLs in 2002 as an agent of the Lakefront Improvement Fund. A person may purchase season tickets or individual tickets without purchasing a PSL. A person may purchase individual tickets without purchasing season tickets. If a person purchases a PSL, "the PSL gives that person the right to purchase a season ticket for a specific seat location" for home games. PSL owners have the right to transfer a PSL by, for example, "aftermarket" sale.

¶ 12      On July 26, 2010, plaintiffs filed a motion for summary judgment on the issue of liability as to their complaint for a declaratory judgment that the City's amusement tax is invalid, unconstitutional, and/or inapplicable to the purchase or sale of a PSL at Soldier Field for Bears football games.

¶ 13      On August 12, 2010, defendant filed a motion to certify a counterdefendant class consisting of "all persons who seek an injunction against any effort by the City to collect taxes on charges paid in connection with subsequent transfers of PSLs." The motion stated

that the relief sought against the counter-defendant class, which is identical to the second plaintiffs' class, is the relief set forth in defendant's counterclaim.

¶ 14    On August 26, 2010, the trial court entered an agreed order to clarify the class definition. The court's order provided the following class definition:

> "All persons and entities who purchased and own or owned a Permanent Seat License ('PSL') at Soldier Field for Chicago Bears football games including: (1) all original PSL purchasers; (2) all subsequent transferees; and (3) any other person or entity who has paid the amusement tax, or on whose behalf the tax was paid, or to whom a demand for payment has been made."

¶ 15    On October 26, 2010, after full briefing by the parties, the trial court took the motions for summary judgment under advisement. On December 14, 2010, the court entered a memorandum decision and judgment making the following orders:

> "1. Plaintiffs' motion for summary judgment, barring enforcement of the Ordinance on proceeds of sales of PSLs, as to sales of PSLs from the Bears to a patron, is DENIED.
>
> 2. Plaintiffs' motion for summary judgment, barring enforcement of the Ordinance on proceeds of sales of PSLs, as to sales of PSLs from a patron to another buyer, is GRANTED.
>
> 3. The City's motion for partial summary judgment, requesting enforcement of the Ordinance, as to sales of PSLs from the Bears to a patron, is GRANTED.
>
> 4. The City's motion for partial summary judgment, requesting enforcement of the Ordinance, as to sales of PSLs from a patron to another buyer, is DENIED.
>
> 5. The City's motion for partial summary [judgment] regarding whether the URPO acts to bar patrons who have sold their PSLs to a patron, or bought their PSLs from a patron, from seeking a refund of the Amusement Tax is GRANTED."

¶ 16    On December 23, 2010, plaintiffs filed a motion for leave to file a second amended complaint. The motion states "Plaintiffs seek to file a Second Amended Complaint *** to add a cause of action based on 42 U.S.C. § 1983 predicated on a violation by Defendants of the Takings Clause of the Fifth Amendment." Plaintiffs attached a proposed second amended complaint that contains a count for declaratory judgment (count I) and a count on behalf of the class of subsequent transferees based on the takings clause (U.S. Const., amend. V) (count II). On January 7, 2011, the trial court granted the motion and granted plaintiffs leave to file a second amended complaint.

¶ 17    On January 12, 2011, plaintiffs filed a notice of motion for reconsideration. Plaintiffs asserted that the trial court should reconsider its order sustaining the collection of defendant's amusement tax on the initial sale of PSLs.

¶ 18    On January 13, 2011, defendant filed a motion to reconsider the January 11, 2011 order granting plaintiffs leave to file a second amended complaint and a separate motion to reconsider portions of the trial court's December 14, 2010, summary judgment order. Specifically, defendant sought reconsideration of the portions of the order holding that the City may not enforce its amusement tax with regard to sales of PSLs from a patron to another buyer and holding that plaintiffs' refund claims are not barred by the voluntary payment

doctrine.

¶ 19     On February 23, 2011, plaintiffs filed a second amended complaint. On March 28, 2011, plaintiffs filed a response to defendant's motion to reconsider the trial court's order granting plaintiffs leave to file a second amended complaint. On April 8, 2011, defendant moved to dismiss count II of plaintiffs' second amended complaint and a separate reply in support of its motion to reconsider the order granting leave to file the second amended complaint. Defendant's reply addressed plaintiffs' argument that the issue of finality was moot because of the parties' motions to reconsider, which plaintiffs raised in response to the City's argument that the motion to file a second amended complaint was erroneous because the trial court entered a final judgment and the amended complaint adds a new cause of action under the takings clause. Also on April 8, 2011, defendant filed a separate motion to strike counts III and IV of the second amended complaint on the grounds plaintiffs' motion for leave to file a second amended complaint attached the pleading plaintiffs sought to file which, along with the motion, made clear plaintiffs only sought leave to add a count II based on the takings clause. Therefore, plaintiffs failed to obtain leave of court to file the additional counts.

¶ 20     On April 26, 2011, plaintiffs moved for a permanent injunction against the City, enjoining it from "imposing, assessing, levying and/or collection [*sic*] an Amusement Tax on the sale or transfer of PSLs where the sale takes place between a PSL owner (other than the Chicago Park District and the Chicago Bears Football Club, Inc., as agent for the Chicago Park District) and any subsequent purchaser or transferee."

¶ 21     On December 22, 2011, the trial court entered a memorandum decision and judgment on the parties' cross-motions for reconsideration. The issues to be decided by the court in its December 22, 2011, judgment included whether plaintiffs' motion for leave to file a second amended complaint should be granted, whether count II of plaintiffs' second amended complaint should be dismissed, and whether counts III and IV of plaintiffs' second amended complaint should be stricken. The court's judgment made the following orders:

"1. The City's motion to reconsider portions of the Court's December 14, 2010 Decision is DENIED as to the Court's Decision the City does not have the statutory authority to tax Resales of PSLs.

2. The City's motion to reconsider portions of the Court's December 14, 2010 Decision is DENIED as to the Court's Decision, even if the City's Uniform Revenue Procedures Ordinance did not apply, Plaintiffs' refund claims would not be barred pursuant to the voluntary payment doctrine.

3. The City's motion to reconsider portions of the Court's December 14, 2010 Decision is GRANTED as to the Court's Decision, the City's home rule authority to tax Resales has been preempted by 65 ILCS 5/8-11-6a.

4. Plaintiffs' motion for summary judgment, barring enforcement of the Ordinance on proceeds of Resales of PSLs is DENIED.

5. Plaintiffs' motion to reconsider whether the Court's Decision the language of the Ordinance is applicable to the Refund Class, original purchases of PSLs is DENIED.

6. Plaintiffs' motion to reconsider whether the City does not possess the statutory

authority to tax original purchases of PSLs is GRANTED.

7. Plaintiffs' motion to reconsider whether the City's Uniform Revenue Procedure Ordinance does not bar Plaintiffs' refunds is GRANTED.

8. The City possesses the statutory authority to tax the Refund Class, original purchases of PSLs.

9. Plaintiffs' argument that the City's Uniform Revenue Procedure Ordinance does not bar Plaintiffs' refunds is moot.

10. The City's motion to reconsider the Court's January 11, 2011 Decision granting Plaintiffs' motion for leave to file a second amended complaint is GRANTED.

11. Plaintiffs' motion for leave to file a Second Amended Complaint is DENIED.

12. The City's motion to dismiss Count II of Plaintiffs' Second Amended Complaint is GRANTED.

13. The City's motion to strike Counts III and IV of Plaintiffs' Second Amended Complaint pursuant to 735 ILCS 5/2-615 is DENIED."

¶ 22    On January 23, 2012, plaintiffs filed a notice of appeal from (a) the December 14, 2010 judgment with respect to the cross-motions for summary judgment, (b) the December 22, 2011 judgment with respect to the cross-motions to reconsider the summary judgment order, and (c) the December 22, 2011 order granting defendant's motion to reconsider the order granting plaintiffs leave to file a second amended complaint and denying plaintiffs' motion for leave to file a second amended complaint. This court docketed the appeal under case number 1-12-0265.

¶ 23    On March 12, 2012, defendant filed a motion for an order pursuant to Illinois Supreme Court Rule 304 (Ill. S. Ct. R. 304 (eff. Feb. 26, 2010)) making an express finding that there is no just reason for delaying enforcement or appeal of the trial court's December 22, 2011 judgment. Defendant's motion states that although the court's judgment disposed of the key issues in the case, defendant's counterclaim for tax, interest and penalties on the resale of PSLs remained pending. On April 24, 2012, the court entered an order finding no just reason to delay enforcement or appeal of the December 22, 2011 judgment.

¶ 24    On May 24, 2012 plaintiffs filed a second notice of appeal based on the trial court's April 24, 2012 order. This court docketed the May 24, 2012 notice of appeal in case number 1-12-1556. The notice of appeal in case number 1-12-1556 specifies the following orders: (1) the December 14, 2010 judgment on the parties' cross-motions for summary judgment; (2) the December 22, 2011 judgment on the parties' cross-motions to reconsider portions of the December 14, 2010 judgment on the cross-motions for summary judgment; and (3) the December 22, 2011 judgment granting defendant's motion to reconsider the January 11, 2011 judgment granting plaintiffs leave to file a second amended complaint.

¶ 25    Defendant has not filed a notice of cross-appeal of any issues or judgments. On July 24, 2012, we allowed defendant's motion to consolidate the appeal in case number 1-12-0265 with the appeal in case number 1-12-1556.

¶ 26                                    ANALYSIS

¶ 27    Before reaching the merits of the parties' arguments on appeal, a question as to this court's jurisdiction must be resolved. "Whether the appellate court has jurisdiction to consider an appeal presents a question of law which we review *de novo*." *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 39. Defendant argues this court lacks jurisdiction over the appeal docketed in case number 1-12-0265 because when plaintiffs filed their notice of appeal, the City's counterclaim was still pending and the trial court had made no findings pursuant to Illinois Supreme Court Rule 304 (Ill. S. Ct. R. 304 (eff. Feb. 26, 2010)). Plaintiffs did not reply to defendant's jurisdictional argument. Defendant admits this court has jurisdiction of the appeal docketed as case number 1-12-1556 pursuant to Rule 304(a).

¶ 28    We agree with defendant that this court has no jurisdiction over the appeal docketed in this court as case number 1-12-0265. "If multiple claims are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the claims only if the trial court makes an express written finding of no just reason to delay either enforcement, appeal, or both. [Citation.] Without a Rule 304(a) finding, a final order disposing of fewer than all the claims is not an appealable order and does not become appealable until all of the claims are resolved." *In re Marriage of Gaudio*, 368 Ill. App. 3d 153, 156 (2006). There is no dispute that the City's counterclaim for a money judgment for taxes on subsequent transfers of PSLs was and is pending before the trial court, or that the court did not make any findings pursuant to Rule 304 before plaintiffs filed the notice of appeal in appellate case number 1-12-0265. Therefore, the January 23, 2012 notice of appeal is insufficient to confer jurisdiction on this court. *In re Marriage of Gaudio*, 368 Ill. App. 3d at 158 ("A premature notice of appeal does not confer jurisdiction on the appellate court.").

¶ 29    We did, however, grant defendant's motion to consolidate the two appeals. Compare *In re Marriage of Gaudio*, 368 Ill. App. 3d at 158. The May 24, 2012 notice of appeal is sufficient to invoke this court's jurisdiction. *Waugh v. Morgan Stanley & Co.*, 2012 IL App (1st) 102653, ¶ 51 ("When a trial court makes a finding pursuant to Rule 304(a) that there is no just reason for delaying enforcement or appeal of a final judgment, any notice of appeal from that final judgment must be filed within 30 days."). Accordingly, the appeal docketed as case number 1-12-0265 is dismissed and we will proceed to resolve the issues under case number 1-12-1556. See *Ameren Illinois Co. v. Illinois Commerce Comm'n*, 2012 IL App (4th) 100962, ¶ 172 (dismissing one of three consolidated appeals and resolving the remaining two appeals on the merits).

¶ 30                               1. Standard of Review

¶ 31    "We must remain mindful *** that this matter was decided in the context of motions for summary judgment, and the purpose of summary judgment is not to try questions of fact but simply to determine if triable questions of fact exist. Summary judgment should not be granted unless the moving party's right to judgment is clear and free from doubt. If the undisputed material facts could lead reasonable observers to divergent inferences, or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Pielet v. Pielet*, 2012 IL 112064, ¶ 53. "When parties file cross-

motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. [Citation.] However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Id.* ¶ 28. "Where a case is decided through summary judgment, our review is *de novo*." *Id*. ¶ 30. "[T]he principal issues we are asked to resolve involve matters of statutory construction. We review issues of statutory construction *de novo*." *NDC LLC v. Topinka*, 374 Ill. App. 3d 341, 358 (2007).

¶ 32                                   2. Taxation Principles

¶ 33        The Illinois Constitution of 1970 delineates the powers of home rule units of government, including the City, and gives such units the authority to "exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power *** to tax." Ill. Const. 1970, art. VII, § 6(a). Section 6(g) of article VII provides that "[t]he General Assembly *** may deny or limit the power to tax." Ill. Const. 1970, art. VII, § 6(g). Article VII, section 6(e), of the Illinois Constitution requires authorization by the General Assembly before a home rule unit can impose a tax upon occupations. *Commercial National Bank of Chicago v. City of Chicago*, 89 Ill. 2d 45, 51-52 (1982). The power of home rule units to tax is also limited, pursuant to section 6(g) of article VII, by section 8-11-6(a) of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/8-11-6(a) (West 2008)). Section 8-11-6(a) prohibits a home rule municipality from imposing a tax on the use, sale or purchase of tangible personal property based on the gross receipts from such sales or the selling or purchase price of said tangible personal property. 65 ILCS 5/8-11-6(a) (West 2008). The City may impose a tax that is beyond its home rule taxing authority if the tax is specifically authorized by the General Assembly. *Commercial National Bank of Chicago*, 89 Ill. 2d at 50-51 ("The power to raise revenue in the enumerated methods stems not from home rule powers but from legislative grant of authority."); *City of Chicago, Illinois v. StubHub, Inc.*, 622 F. Supp. 2d 699, 704 (N.D. Ill. 2009) ("even if home rule authority is preempted, a home rule municipality can still impose whatever taxes the General Assembly has granted all municipalities the power to impose").

¶ 34        The City has exercised is authority to tax with, among others, a tax on amusements in Chicago Municipal Code title 4, division VI, chapter 4-156. Section 4-156-010 of the Chicago Municipal Code defines an amusement as "any exhibition, performance, presentation or show for entertainment purposes *** including *** any *** athletic contest *** such as *** football." Chicago Municipal Code § 4-156-010 (amended Nov. 19, 2008). Section 4-156-020 imposes "an amusement tax *** upon the patrons of every amusement within the city." Chicago Municipal Code § 4-156-020(A) (amended Nov. 19, 2008). The rate of the tax is a percentage[1] "of the admission fees or other charges paid for the privilege

---

[1]The percentage tax rate changed between the original sale of PSLs by the Bears in 2002 and 2003 and any subsequent transfers beginning in 2004. In this appeal, the percentage tax rate is not germane. Defendant's counterclaim for payment of taxes on subsequent transfers of PSLs remains pending and is not a subject of this appeal. In light of our disposition, the appropriate tax rate must

to enter, to witness, to view or to participate in such amusement." *Id.*

¶ 35                                 3. Authority to Tax PSLs

¶ 36        Before we may determine if the amusement tax is applicable to either the original sale or subsequent transfer of a PSL, we must first determine whether the tax is preempted. Section 8-11-6a of the Municipal Code states that, with certain exceptions, "no home rule municipality has the authority to impose, pursuant to its home rule authority, a *** tax on the use, sale or purchase of tangible personal property based on the gross receipts from such sales or the selling or purchase price of said tangible personal property." 65 ILCS 5/8-11-6a (West 2008). Plaintiffs argue that section 8-11-6a preempts the City's home rule authority to tax PSLs because a PSL is tangible personal property under our decision in *Mr. B's, Inc. v. City of Chicago*, 302 Ill. App. 3d 930 (1998). Plaintiffs also argue that the tax on PSLs is analogous to the attempt to tax membership fees that was rejected in *Chicago Health Clubs, Inc. v. Picur*, 124 Ill. 2d 1 (1988). Plaintiffs argue that applying the tax to the sale of a PSL "is not on the activity of attending a football game, but on the activity of selling certain rights or amenities which are incidental to attendance." Plaintiffs characterize the sale of PSLs as a service performed by the Bears to raise funds for the renovation of Soldier Field and argue that the application of the amusement tax is a tax on that service; thus, *Chicago Health Clubs, Inc.* is applicable. Plaintiffs assert the Bears did not sell the PSLs for entertainment, but to finance renovations, and the Bears were subject to the same responsibilities for the collection and remittance of the tax as were the plaintiffs in *Chicago Health Clubs, Inc.*

¶ 37        First, we reject any implicit argument that the fact revenue from PSL sales was used to finance lakefront improvements or renovations to Soldier Field has any bearing on the validity of the City's amusement tax. The purpose of the underlying taxable transaction has no bearing on the validity of the tax on that transaction. "For this tax, levied by the city of Chicago, to be valid it must *** be for a corporate purpose–that is, in aid of a public object which is within the purposes for which such government is established." *People v. City of Chicago*, 413 Ill. 83, 87-88 (1952). Plaintiffs have made no argument the City does not use its tax revenue from the amusement tax for a corporate purpose.

¶ 38        Second, we find that *Mr. B's, Inc.* is not controlling on this issue and in fact conflicts with our supreme court's decisions as to what constitutes tangible personal property for taxation purposes. The sole basis of plaintiffs' argument that PSLs are tangible personal property is that the transaction to purchase a PSL is allegedly similar to the transaction to purchase a ticket from a ticket broker in *Mr. B's, Inc.* Plaintiffs argue that the prices charged for PSLs are over and above the amount paid for the season ticket, therefore, the original purchase of a PSL should be treated the same as the tickets sold by ticket brokers over and above the face value of the tickets. Plaintiffs argue that, like the transaction between ticket brokers and their patrons, the purchase of a PSL from the Bears is incidental to the purchase of season tickets. Plaintiffs argue that the subsequent transfer of a PSL by an original purchaser is even more similar to the transaction at issue in *Mr. B's, Inc.* because "[n]ot only

be determined on remand.

-10-

is the charge independent from that of the tickets, but the price of the PSL is determined solely by market forces."

¶ 39    We do not find *Mr. B's, Inc.* compelling authority in favor of finding that a PSL is tangible personal property. The *Mr. B's, Inc.* court found that the tickets in that case were tangible personal property in response to the plaintiffs' argument that tickets are not tangible personal property under this court's decision in *Soderholm v. Chicago National League Ball Club, Inc.*, 225 Ill. App. 3d 119 (1992). *Mr. B's, Inc.*, 302 Ill. App. 3d at 937. The *Mr. B's, Inc.* court found that the plaintiffs' reliance on *Soderholm* was misplaced because "[t]his court in *Soderholm* did not conclude that tickets are not tangible personal property; rather, this court addressed the issue of whether a season ticket is a license that permits the holder to enter a ball park subject to its terms and conditions. Thus, *Soderholm* does not stand for the proposition that all tickets are licenses." *Mr. B's, Inc.*, 302 Ill. App. 3d at 937. While *Soderholm* may not stand for the very broad and general proposition that all tickets are licenses, we find that *Soderholm* does support finding that a PSL is *not* tangible personal property.

¶ 40    The *Soderholm* court expressly held that "a season ticket is a revocable license." *Soderholm*, 225 Ill. App. 3d at 124. The court reasoned as follows:

> "A license grants the licensee a right to enter upon the licensor's land and use it for a specific purpose, without giving up the licensor's legal possession and control over the property ***. [Citation.] A license is revocable at any time at the will of the licensor [citation], and mere permission to use land does not ripen into a prescriptive right regardless of the length of time that such enjoyment is permitted. [Citation.]
>
> It is clear that a Cubs season ticket consists of a series of revocable licenses ***. *** Each individual ticket permits the holder to enter the ball park on the date and at the time stated on the ticket for the specific purpose of attending the identified game and sitting in the specified seat, subject to all terms, conditions and policies established by the Chicago Cubs." *Soderholm*, 225 Ill. App. 3d at 124-25.

¶ 41    We note here that for reasons set out fully below, the price paid for a PSL constitutes part of the charge paid to view an amusement. Thus, just as in *Soderholm*, the price paid for a PSL is part of the total charges which permit the holder to enter the stadium for the specific purpose of attending a Bears game and of sitting in the specified seat. The fact that an additional step is required to obtain that privilege–the purchase of the season tickets associated with the PSL seat–does not change the nature of the rights obtained by the purchase of a PSL, which is a personal privilege that carries with it no vested property right. See *Weinstein v. Daley*, 85 Ill. App. 2d 470, 481 (1967) (involving revocation of a retail liquor license and holding that "[a] license is purely a personal privilege to do what would otherwise be unlawful and hence carries with it no vested property right").

¶ 42    The decisions of our supreme court provide additional authority in support of finding that a PSL is not tangible personal property. In *Colorcraft Corp. v. Department of Revenue*, 112 Ill. 2d 473 (1986), the issue was whether the plaintiff's business, which developed film for retail dealers, was a service occupation or whether it was engaged in manufacturing. *Id.* at 476.

"[A] standard has been developed to determine whether a business is a service or a retail occupation. The test *** provides:

> If the article sold has no value to the purchaser except as a result of services rendered by the vendor and the transfer of the article to the purchaser is an actual and necessary part of the service rendered, then the vendor is engaged in the business of rendering service and not in the business of selling at retail. If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail. [Citations.]" (Internal quotation marks omitted.) *Id.* at 481-82.

¶ 43        Our supreme court held that the plaintiff-taxpayer was not in the business of selling tangible personal property. *Colorcraft Corp.*, 112 Ill. 2d at 483. The court reasoned that "the article sold in the instant case, the finished prints, have no value to the customer except as a result of the services rendered by Colorcraft. *** [A]lthough the transfer of the prints *** is an actual and necessary part of the service rendered, it is the service of creating the prints which is the essence of the transaction." *Id.* The court found that "[t]he customer is really paying for the skill, labor, and use of the machinery and equipment of the photofinisher." *Id.* at 484. "Therefore, Colorcraft is not in the business of selling tangible personal property." *Id.*

¶ 44        Similarly, here, the purchaser of a PSL is really paying for the privilege of viewing an amusement. The *Colorcraft Corp.* court noted that "[i]t is unlikely that the average person would be even remotely interested in purchasing prints developed for another." *Colorcraft Corp.*, 112 Ill. 2d at 484. It is similarly unlikely that the average person would be even remotely interested in purchasing a PSL, then never viewing a Bears game. Although, for some, the purchase of the PSL is an actual and necessary part of obtaining the privilege of viewing a Bears game, it is the privilege to view the game which is the essence of the transaction, not the transfer of the PSL. See *Colorcraft Corp.*, 112 Ill. 2d at 483 (citing *First National Bank of Springfield v. Department of Revenue*, 85 Ill. 2d 84, 91 (1981) ("the sale of computer software *** is, in substance, the transfer of intangible personal property")). In *First National Bank of Springfield*, the court looked to the "essence of the transaction" to determine whether the transfer involved tangible personal property. *First National Bank of Springfield*, 85 Ill. 2d at 90. The privilege of viewing a Bears game is the substance of a transaction involving a PSL.

¶ 45        The true benefit of the sale or purchase of a PSL is to view a Bears game from a particular seat. This is evident from the fact that the PSL becomes void if the season ticket for its seat is not purchased. Therefore, the true substance of the transaction is the privilege of viewing a Bears game. See generally *Communications & Cable of Chicago, Inc. v. Department of Revenue*, 275 Ill. App. 3d 680, 685 (1995) ("the transfer of tangible property will not result in sales tax liability where such transfer is merely incidental to the rendering of a service, which is the true substance of the transaction").

¶ 46        We find that under our supreme court's reasoning in *First National Bank* and *Colorcraft Corp.*, as well as *Soderholm*, a PSL is not tangible personal property. Neither *City of*

-12-

*Chicago, Illinois v. StubHub, Inc.*, 622 F. Supp. 2d 699, 703-04 (N.D. Ill. 2009), nor *City of Chicago v. eBay, Inc.*, No. 08 C 3281 (N.D. Ill. Dec. 21, 2009), is binding on this court. Moreover, each case relied solely on *Mr. B's, Inc.* for its conclusion that the sale of amusement tickets at prices above face value constitutes tangible personal property. See *StubHub, Inc.*, 622 F. Supp. 2d at 703-04. For the reasons stated above, we find that *Mr. B's, Inc.* is unpersuasive in light of conflicting supreme court authority on this topic.

¶ 47      Finally, the amusement tax on PSL sales is not an occupation tax. *Kerasotes Rialto Theater Corp. v. City of Peoria*, 77 Ill. 2d 491, 500 (1979) (holding that a tax upon the privilege of participating in or witnessing an amusement was not a tax on an occupation (citing *Town of Cicero v. Fox Valley Trotting Club, Inc.*, 65 Ill. 2d 10 (1976))). In *Fox Valley Trotting Club, Inc.*, 65 Ill. 2d at 14, our supreme court found that a tax "upon all amusements within the town of Cicero at the rate of 10 cents per person witnessing, participating in or entering the grounds or enclosure of a place of amusement or entertainment" was not a tax upon given occupations. *Id.* The court recognized that "some of those who are taxed by the Ordinance may be said to be engaged in the occupation of presenting or conducting amusements." *Id.* at 23. The court held that "[i]t is not sufficient *** that the burden of the tax fall upon those engaged in occupations ***. Rather, the ordinance must be designed to impose, and in fact impose, a tax upon given occupations." *Id.*

¶ 48      "[A]n occupation tax has one of two missions: either to regulate and control a given business or occupation, or to impose a tax for the privilege of exercising, undertaking or operating a given occupation, trade or profession." (Internal quotation marks omitted.) *Fox Valley Trotting Club, Inc.*, 65 Ill. 2d at 23. The court held that the ordinance at issue was not so designed because the tax did not have a regulatory purpose and was not otherwise designed to tax those engaged in a given occupation, trade, or profession. *Id.* Similarly, in this case, we find that the City's amusement tax has no regulatory purpose. Nor is the tax designed to tax those engaged in a given occupation, trade, or profession. The tax is not designed to tax the occupation of presenting professional football games. The tax is on the privilege to view or to participate in a professional football game, which is indisputably an amusement within the meaning of the ordinance. The duty to pay the tax is not predicated upon the generation of revenue; therefore, the tax is not confined to those who are "engaged in businesses for profit." *Fox Valley Trotting Club, Inc.*, 65 Ill. 2d at 22. Rather, the tax is on the charges paid for the privilege of viewing an amusement. Moreover, the incidence of the tax is on the consumer, although responsibility for collecting and remitting the tax may fall to the wholesaler and retailer. Our supreme court has found that similar taxes are not an occupation tax. *Kerasotes Rialto Theater Corp.*, 77 Ill. 2d at 500.

¶ 49      We are not persuaded by plaintiffs' reliance on *Chicago Health Clubs, Inc.* In *Chicago Health Clubs, Inc.*, our supreme court found that the tax at issue imposed an occupation tax (*Chicago Health Clubs, Inc.*, 124 Ill. 2d at 11) and was not a tax on an amusement and, therefore, was not authorized by section 11-42-5 of the Municipal Code (*Chicago Health Clubs, Inc.*, 124 Ill. 2d at 13-14). *Chicago Health Clubs, Inc.* is distinguishable. First, our supreme court found that "although the tax may ostensibly fall on individuals receiving the clubs' services, the tax truly is an 'occupation' tax within the meaning of section 6(e) [of article VII]." *Chicago Health Clubs, Inc.*, 124 Ill. 2d at 10. The court reached that conclusion

-13-

considering that the clubs are responsible for collecting and remitting the tax, responsible for paying the tax regardless of whether their patrons refuse to do so, and are subject to penalties for delays in submitting tax payments. *Id.* The court concluded that "it is clear that a tax on membership fees on health and racquetball club memberships is a tax on those occupations." *Id.* at 12.

¶ 50     Next, our supreme court turned to the meaning of "amusement" for purposes of section 11-42-5 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, ¶ 11-42-5) to determine if the statute authorized the tax on health clubs as "amusements" or "places of amusement." *Chicago Health Clubs, Inc.*, 124 Ill. 2d at 12. In that case, the court found that the membership fees that were subject to the tax "covered a wide variety of both amusement and nonamusement activities." *Id.* at 13. The nonamusement services provided by the clubs included "nutritional instructions, weight loss counseling, diet counseling, cardiovascular examinations and counseling, and instruction in weightlifting and other physical fitness activities." *Id.* at 13-14. The court held that "in view of the wide variety of nonamusement activities carried on at these clubs, we simply cannot conclude that a tax on their membership fees is a tax on either 'amusements' or 'places of amusement.' " *Id.* at 14. The ordinance could not be saved by attempting to insulate from taxation either service activities or items purchased at the health clubs. *Id.* at 14-15. "The plain language of the amended ordinance *** does not distinguish between service and nonservice components of the entities remitting the tax, and there is nothing in the amended ordinance to support defendant's 'theory' that the tax applies to anything less than the gross receipts of health and racquetball clubs." *Id.* at 15.

¶ 51     In this case, the incidence of the tax is not just ostensibly on the patron of an amusement. The practical operation and effect of the tax is in fact on patrons of amusements who are responsible for the tax even if the tax collector–which includes the operators of amusements and the resellers of tickets–fails to collect the tax. Chicago Municipal Code § 4-156-030(C) (amended Nov. 19, 2008). The placement of responsibility on the operator of an amusement, the place where an amusement is being held, or on resellers, to collect and remit the tax does not make the tax a *de facto* occupation tax. *Kerasotes Rialto Theater Corp.*, 77 Ill. 2d at 500 ("In that case it was held that the incidence of the tax was on the consumer, although the tax ordinance placed responsibility for collecting and remitting the tax on the wholesaler and retailer. The tax in that case was held not to be an occupation tax." (citing *S. Bloom, Inc. v. Korshak*, 52 Ill. 2d 56 (1972))). Nor is the tax unique to a particular commercial enterprise, such as Chicago Bears' football. Compare *Chicago Health Clubs, Inc.*, 124 Ill. 2d at 11-12 ("by defining 'amusement' to include 'racquetball or health clubs,' and by further establishing a tax on those clubs' membership fees, the city has gone far beyond merely taxing particular activities [citation], and has imposed a tax unique to those types of commercial enterprises").

¶ 52     Also instructive is Justice Ryan's special concurrence in *Chicago Health Clubs, Inc.* Justice Ryan concurred in the judgment that the tax at issue constitutes an occupation tax which had not been authorized by the General Assembly, but found that "the opinion is not clear in its analysis for determining whether a tax is an occupation tax within the meaning of article VII, section 6(e)." *Chicago Health Clubs, Inc.*, 124 Ill. 2d at 16 (Ryan, J., specially

concurring). In *Chicago Health Clubs, Inc.*, Justice Ryan found determinative the fact that "a tax on membership fees or dues of health and racquetball clubs is not such a tax as the delegates to the constitutional convention intended home rule units to levy." *Id.* at 18. "These clubs perform services, and the tax is measured not by participation in or admissions to individual events, but on membership dues collected by the clubs. It is in the nature of a service tax and, as such, is similar to those taxes held invalid in *Commercial National Bank v. City of Chicago*." *Id.* In this case, the tax is measured by the charges paid for admission to events, not any services performed by the Bears or by the Chicago Park District.

¶ 53      Additionally, we find that the ordinance does not create an occupation tax because it does not impose a tax on the service of raising renovation funds, the privilege of presenting Bears' football, or for engaging in professional football as a profession. *Illinois Gasoline Dealers Ass'n v. City of Chicago*, 119 Ill. 2d 391, 399 (1988) ("To determine if a tax constitutes an occupation tax, it must be judged by the standard of whether it regulates and controls a given occupation, or imposes a tax for the privilege of engaging in a given occupation, trade or profession [citation], or finally, whether it imposes a tax on the privilege of engaging in the business of selling services [citation]."). The charge for a PSL is a charge for the privilege to view an amusement and the City's tax on those charges is not preempted.

¶ 54      For the foregoing reasons, we conclude that PSLs are an intangible right to purchase a ticket to enter the stadium to view or attend an amusement and, therefore, section 8-11-6a does not preempt the tax as a tax on tangible personal property. Nor is the tax on PSLs a tax on occupations. We find that the City's amusement tax, as applied to PSLs, is not preempted by any provision in article VII of the Illinois Constitution. Accordingly, we find that the City is authorized to tax PSLs. See *Commercial National Bank*, 89 Ill. 2d at 50 ("any limitation on the power of a home rule unit to tax must be found within section 6 of article VII of the Constitution"). Based on our finding, we have no need to reach the question of whether the City's tax is specifically authorized by section 11-42-5 of the Municipal Code.

¶ 55                              4. Applicability of Ordinance

¶ 56      Having determined that the amusement tax is not preempted, we must now determine whether the tax is applicable to PSLs under the language of the ordinance. The amusement tax defines football as an amusement. Chicago Municipal Code § 4-156-010 (amended Nov. 19, 2008). The ordinance imposes the tax on "the admission fees or other charges paid for the privilege to enter, to witness, to view or to participate in such amusement." Chicago Municipal Code § 4-156-020(A) (amended Nov. 19, 2008). The question in this case is not whether the activity involved is an amusement, but whether the price paid for a PSL is a charge to enter, to witness, to view or to participate in such amusement.

¶ 57      Plaintiffs argue that it is not, because the PSL does not give its purchaser the right to enter, witness, view or participate in the game. Plaintiffs argue that a PSL grants the holder the right to purchase season tickets annually for a particular seat, and to transfer that right, but, unlike the season tickets themselves, a PSL does not grant its holder the right to enter, view, witness or participate in the event. The "bundle of rights" conferred by a PSL are distinct from the rights conferred by a ticket. Plaintiffs interpret the amusement tax to apply

only to the charge for actual entry to an amusement and under the ordinance, the right of entry is defined as a "ticket." Further, plaintiffs argue the original sales of PSLs are not within the scope of the amusement tax because the Chicago Park District did not sell PSLs for an amusement, but to finance lakefront improvements. Plaintiffs argue that the purpose for the charge is relevant because the plain language of the ordinance limits its reach to charges for admission to amusements.

¶ 58    According to plaintiffs, it is the price of the ticket, and only the price of the ticket, which constitutes the "admission fees or other charges paid for the privilege to enter, to witness, to view or to participate in [the] amusement." This argument is irreconcilable with the plain language of the ordinance. Plaintiffs' interpretation of the ordinance would render the language "other charges" completely superfluous to "admission fees." Plaintiffs argue that both "admission fees" and "other charges" modify "paid for the privilege to enter, to witness, to view or to participate in such amusement," and as such the price paid for the PSL cannot be considered. Plaintiffs' argument, then, is that the ordinance is superfluous in its use of "admission fees" and "other charges" but, somehow, in this context superfluidity is acceptable. We disagree because construing the ordinance in this way would clearly be inappropriate. *Daniels v. Corrigan*, 382 Ill. App. 3d 66, 72 (2008) ("Courts apply the principles of statutory construction to ordinances."); *Catom Trucking, Inc. v. City of Chicago*, 2011 IL App (1st) 101146, ¶ 15 ("We must construe the statute so that each word, clause, or sentence is given reasonable meaning and not deemed superfluous or void." (Internal quotation marks omitted.)).

¶ 59    We find that the price of a PSL represents a charge for the privilege of viewing the amusement. The record contains the PSL terms and conditions. The terms and conditions are "deemed a part of the Permanent Seat License Agreement" and are "binding upon [the] Licensee and Licensor and their respective assigns." The terms provide that each PSL relates to a specific seat designated in the PSL agreement and state that in consideration of the purchase of a PSL, the licensee under the PSL "shall have the right to purchase from the Team a Season Ticket, and the Team agrees to offer for sale to Licensee a Season Ticket for the seat to which a PSL applies. Licensee shall have no right to enter the Stadium or to attend the Team's games without purchase of a ticket for such game." The terms regarding "Use of Seats and Stadium" provide:

> "Licensee will have the privilege to enter the Stadium for Team home games and use the seats to which Licensee's PSL relates only upon presentation of a ticket for admission to a Team home game. Licensee's PSL does not confer upon Licensee any privilege to enter the Stadium or attend a Team home game."

¶ 60    The terms and conditions permit the licensee to transfer a PSL and require there to be only one licensee for a given seat at any given time. The terms contain the following disclaimer: "The rights licensed under this Agreement are revocable rights of personal privilege and do not confer upon Licensee any interest in real property or any leasehold interest in the seat to which the PSL applies or the Stadium." The termination clause of the PSL terms and conditions refer to "Licensee's right to purchase a Season Ticket for each seat to which a PSL applies." A PSL terminates upon the failure to purchase a season ticket for each PSL for any football season. The terms also contain the following provision regarding

-16-

taxes:

> "At the option of the Team, any sales, use, service amusement or other tax or governmental charge imposed on the PSLs or the sale thereof or of Season Tickets to Licensee may be added to the prices(s) charged to Licensee and shall then be the responsibility of and paid by Licensee."

¶ 61 Defendant argued, and, based on the forgoing, we agree, that the charge a PSL ticket holder pays for the privilege of viewing a Bears game includes the charge for the PSL because owning the PSL for their seat is a prerequisite to purchasing a ticket for their seat. A PSL pertains to a seat in the stadium for which only the PSL holder may purchase a ticket. Therefore, the "admission fees" and "other charges" a fan sitting in a seat subject to a PSL paid to view a Bears game includes both the season ticket and the fee for the PSL on his or her seat because that fan would not be able to view the game unless he or she both held the PSL for the seat and purchased season tickets for the seat.[2] This conclusion is supported by the language of the PSL agreement. Under the PSL terms and conditions, a PSL is a nullity without a ticket. The following "Representations of Licensee" contained in the terms and conditions is also relevant:

> "(a) Licensee has read and understands the terms of this Agreement;
>
> * * *
>
> (d) Licensee is acquiring the PSL solely for the right to purchase season tickets to the Team home games at the stadium"

¶ 62 The only function of a PSL, by its own terms, is to confer the privilege of viewing a Bears game by being able to buy season tickets. A PSL is not the only means of obtaining that privilege, but obtaining the privilege of entering the stadium is the only intrinsic reason for purchasing a PSL. Plaintiffs' argument that ownership of a PSL is not a prerequisite to entering the stadium is unavailing. Purchasing the PSL is a prerequisite to viewing the game from a seat covered by a PSL. Plaintiffs stated that a PSL has value because it requires the Bears to sell its holder season tickets and gives the holder the ability to transfer that right. Whatever extrinsic value that right has, our focus is on the purpose of the charge for the PSL itself. Intrinsically, the only purpose and function of purchasing a PSL is to purchase the right to view an amusement. On its face, a PSL cannot be separated from the privilege of viewing a Bears game, because the PSL terminates automatically and without notice if a ticket is not purchased.

¶ 63 We hold that the amusement tax applies to the price paid for a PSL, either by an original purchaser or by a subsequent transferee, because that price is a charge paid for the privilege of viewing an amusement. In light of this holding, we have no need to address the parties' arguments concerning whether plaintiffs' claim for refunds of the taxes paid on the original PSL purchases is time barred. The City properly collected and the Bears voluntarily paid the

---

[2]Unless, of course, the PSL holder who purchased season tickets gifted tickets to a particular game to a third party. The tax would still apply, because the tax is on the charges paid for the privilege to enter, not, as plaintiffs argued, on the charges paid for actual entry. For that reason, the tax applies even if the season ticket holder does not attend the game.

tax on the original PSL sales.

¶ 64    Plaintiffs' first amended complaint alleged that the City's attempt to collect the tax–presumably against subsequent PSL transfers–is time barred by section 13-205 of the Code (735 ILCS 5/13-205 (West 2008)). We have held that the City's amusement tax applies to resales of PSLs. The City seeks monetary judgment against those who did not pay the tax on the charges they paid to obtain PSLs after 2003. That claim remains pending in the trial court, and the trial court's judgment before this court did not make an express determination as to whether the City is barred from collecting those taxes. Whether the statute of limitations applies[3], and whether any particular counterdefendant can plead and prove a statute-of-limitations defense, is a fact-specific determination that will depend on the particular facts and circumstances of the individual counterdefendant's purchase or sale of a PSL. See *Rajcan v. Donald Garvey & Associates, Ltd.*, 347 Ill. App. 3d 403, 410 (2004) ("the statute of limitations is an affirmative defense to a proceeding and applies only when raised by a party; the party asserting it has the burden to show it applies" (emphasis and internal quotation marks omitted)). Those questions have not been addressed in this appeal, and must be resolved in the trial court in further proceedings on defendant's counterclaim.

¶ 65                        5. Plaintiffs' Second Amended Complaint

¶ 66    We now turn to the question of whether the trial court properly denied plaintiffs' motion for leave to file a second amended complaint. "The decision whether to allow or deny an amendment is a matter within the circuit court's discretion, and we will reverse only if the circuit court abused its discretion." *Illinois State Bar Ass'n Mutual Insurance Co. v. Cavenagh*, 2012 IL App (1st) 111810, ¶ 23. Initially, plaintiffs argued that the trial court had authority to allow their second amended complaint because the court's order on the parties' cross-motions for summary judgment was not a final judgment, and the amendment satisfied the factors applicable to the determination of whether amendment after summary judgment should be allowed pursuant to section 2-1005(g) of the Code (735 ILCS 5/2-1005(g) (West 2010)). Those factors were identified in *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272 (1992). Section 2-1005(g) of the Code of Civil Procedure states that "[b]efore or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2-1005(g) (West 2012). In *Loyola Academy*, our supreme court held:

_____

[3]See *La Pine Scientific Co. v. Lenckos*, 95 Ill. App. 3d 955, 958 (1981) ("Statutes of limitation affect the remedy by limiting the period within which legal action may be brought or remedies may be enforced; they bar the right to sue for recovery but do not extinguish the debt which remains as before. [Citations.] *** [T]he assessments in question remain as debts owing to the State but are not enforceable by means of a lawsuit brought by the State."). But see *Champaign County Forest Preserve District v. King*, 291 Ill. App. 3d 197, 200 (1997) ("As a general rule, the statute of limitations will not apply to bar a claim by a governmental entity acting in a public capacity. However, where the entity is acting in a private capacity, its claim may be subject to a limitations defense.").

"[T]o determine whether the trial court has abused its discretion, we must look at four factors *** adopted by this court. These factors are: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy*, 146 Ill. 2d at 273.

¶ 67    Plaintiffs argued the order on the motions for summary judgment was not a final order because defendant's counterclaim and plaintiffs' claim for injunctive relief as to the taxation of subsequent transfers of PSLs remained pending. As to the *Loyola Academy* factors, plaintiffs argued their amendments correct certain defects in the pleading, including clarification of the relationship between the Bears and the Chicago Park District, the fact that PSLs were sold independently of season tickets, facts which purportedly obviated the applicability of the URPO and buttressed the court's decision regarding the inapplicability of the voluntary payment doctrine, and the circumstances underlying the alleged lack of notice to original PSL purchasers of the tax. Plaintiffs also argued defendant could not claim prejudice or surprise from the amendment, the amendment was timely, and the only prior amendment was for the purpose of adding additional plaintiffs. Plaintiffs assert the trial court was mistaken in its belief it acted beyond its authority when it initially granted leave to amend, therefore its order upon reconsideration denying plaintiffs' motion for leave to file a second amended complaint should be reversed.

¶ 68    Defendant concedes its counterclaim remains pending in the trial court. Defendant focuses on the added counts III and IV and argues plaintiffs never obtained leave to file a second amended complaint alleging either a due process or an equal protection violation. In reply, plaintiffs argue defendant waived its argument regarding plaintiffs' due process and equal protection claims by failing to file a cross-appeal of the trial court's denial of defendant's motion to strike those counts. Plaintiffs do not refute they failed to obtain leave to file counts III and IV, but argue that the failure to obtain leave to add claims is not a jurisdictional defect and, if the trial court believes a pleading is defective, the proper course is to allow the pleading to be filed and then hear argument as to its efficacy, which is what the trial court did in this case when it denied defendant's motion to strike.

¶ 69    Plaintiffs' second amended complaint contained a count for declaratory judgment (count I); a count based on the takings clause (count II); a count alleging defendant deprived PSL purchasers of due process (count III); and a count on behalf of original purchasers of PSLs alleging that as a result of the court's summary judgment order, the City has taxed some PSL purchasers (original purchasers) and not others (subsequent transferees) in violation of the original purchasers' right to equal protection (count IV). If a proposed amendment will not cure a defect in the pleading, the other factors used to determine whether the trial court abused its discretion in denying leave to amend are superfluous. *Watkins v. Office of the State Appellate Defender*, 2012 IL App (1st) 111756, ¶ 34.

¶ 70    In light of our disposition, we find that no amendments to count I of plaintiffs' complaint will cure a defect in the pleadings. For the reasons set forth herein, defendant's amusement tax is specifically authorized by the General Assembly, and based on the purpose of purchasing a PSL as embodied in its terms and the nature of the rights conferred, the

amusement tax applies to any sales of PSLs by any party. Any argument concerning whether plaintiffs' claims for a refund are barred by the voluntary payment doctrine or any statute of limitations, whether the discovery rule or equitable tolling applies to plaintiffs' claim for a refund, or whether the City's URPO bars plaintiffs' refunds is moot. Plaintiffs are not entitled to a refund because the City properly collected the tax.

¶ 71 Thus, there is no set of facts that would entitle plaintiffs to the declaratory and injunctive relief they seek. Accordingly, any amendment to the complaint as to count I would be futile, and the trial court did not abuse its discretion in denying plaintiffs leave to amend that count. See *Watkins*, 2012 IL App (1st) 111756, ¶ 35.

¶ 72 As to count II, the trial court did not abuse its discretion because plaintiffs cannot state a claim under the takings clause. *Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 81 (2008) ("It is well settled that the takings clauses of the federal and state constitutions apply only to the state's exercise of eminent domain and not to the state's power of taxation."). A PSL is not real property and confers no rights in real property. Therefore, a takings analysis is not applicable. *Id.* at 83.

¶ 73 Finally, as to counts III and IV of the second amended complaint, the court has held that "[a]mendments that are filed without leave of court 'are said to be a nullity which should be stricken.' [Citation.]" *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 703 (2000). The failure to obtain leave to amend a complaint is not a jurisdictional defect to the extent a party may waive its right to object to the defect. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 355 (1998). See also *Savage v. Pho*, 312 Ill. App. 3d 553, 557 (2000) ("the requirement of obtaining leave of court may be waived by the parties"). Here, defendant did not waive its right to object to plaintiffs' failure to obtain leave to file counts III and IV of their second amended complaint. Defendant promptly moved to dismiss those counts on that basis. There is no genuine dispute that plaintiffs did not obtain leave to file counts III and IV of the second amended complaint. Those counts are a nullity.

¶ 74 The trial court's judgment denying plaintiffs leave to file the second amended complaint was not an abuse of discretion.

¶ 75 CONCLUSION

¶ 76 Case number 1-12-0265 is dismissed. We find that the City's amusement tax is not preempted and, therefore, is a proper exercise of its home rule authority. We express no opinion on the City's counterclaim for a money judgment because that claim remains pending in the trial court. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011) ("A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal."). The trial court's judgment is affirmed and the cause remanded for further proceedings.

¶ 77 Affirmed and remanded.