# Illinois Official Reports

## Appellate Court

---

### *Illinois State Bar Ass'n Mutual Insurance Co. v. Canulli,*
### 2020 IL App (1st) 190142

---

| | |
|---|---|
| Appellate Court Caption | ILLINOIS STATE BAR ASSOCIATION MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. MICHAEL D. CANULLI, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-19-0142 |
| Filed<br>Rehearing denied | March 13, 2020<br>May 13, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 11-CH-5420, 12-CH-12834; the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael D. Canulli, of Naperville, appellant *pro se*.<br><br>Robert Marc Chemers and Scott L. Howie, of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant-appellant Michael D. Canulli challenges the circuit court of Cook County's entry of summary judgment in favor of plaintiff-appellee Illinois State Bar Association Mutual Insurance Company (ISBA Mutual) in its declaratory judgment action. Finding that ISBA Mutual owed Canulli a duty to defend, we reverse the entry of summary judgment in its favor and remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3    ISBA Mutual issued a policy of professional liability insurance to Canulli, an attorney, beginning in June 2009. At some point thereafter, Canulli began representing Maria Freda in her divorce from her husband, Michael Maude. During the course of that litigation, Canulli, on Freda's behalf, filed a third-party complaint against a number of individuals and entities referred to collectively as "Prairie State."

¶ 4    On May 12, 2010, Prairie State moved for sanctions against Canulli and Freda (the sanctions motion), alleging that the suit against it was not well grounded in fact or law and was instead intended solely to harass Prairie State. Canulli requested ISBA Mutual to defend him against the sanctions motion, but ISBA Mutual rejected his tender. In February 2011, ISBA Mutual filed a complaint (case No. 11 CH 5420), seeking a declaratory judgment that it did not owe Canulli a duty to defend.

¶ 5    Three months later, in May 2011, Freda sued Canulli for malpractice, alleging that Canulli acted negligently in seeking injunctive and other relief against Prairie State in connection with her divorce. She further alleged that, as a result of Canulli's acts and omissions, she was "damaged in an amount in excess of the minimal jurisdictional limits of the [court]." This time, ISBA Mutual accepted the tender of defense and retained counsel to defend Canulli.

¶ 6    Less than one year later, on February 16, 2012, Freda amended her complaint, alleging again that Canulli was negligent in suing Prairie State but clarifying that she was damaged in an amount in excess of $100,000 "in that she has incurred attorney's fees and costs for useless and unnecessary legal proceedings initiated by [Canulli]." Her amended complaint also added a count alleging breach of contract, stating that Canulli breached his agreement to provide legal services to Freda by "inflating bills" and "performing actions which were neither necessary nor reasonable to the prosecution and ultimate resolution of the *** divorce." Again, Freda repeated that her damages were in excess of $100,000 "in attorney's fees and costs."

¶ 7    One month later, on March 15, 2012, Gummerson Rausch, the firm ISBA Mutual had retained to represent Canulli, moved to dismiss Freda's amended complaint on the grounds that there had already been a judicial determination that Canulli's fees for representing Freda were reasonably and necessarily incurred.

¶ 8    Notwithstanding this motion, on April 9, 2012, ISBA Mutual filed a declaratory judgment action seeking a finding that it was not obligated to defend Canulli against Freda's amended complaint. One month later, on May 18, 2012, Gummerson Rausch moved to withdraw as Canulli's attorney.

¶ 9    Canulli, now representing himself, moved to consolidate the two declaratory judgment actions. Over ISBA Mutual's objection, the motion was granted.

¶ 10    Canulli filed an amended answer and countercomplaint to ISBA Mutual's declaratory judgment complaint in the Freda malpractice action in March 2013. His countercomplaint contained four counts: (1) declaratory judgment, seeking a finding that Freda's amended malpractice complaint presented a covered claim; (2) breach of contract to provide insurance based on ISBA Mutual's failure to defend him in the malpractice action; (3) "breach of special fiduciary relationship," alleging that ISBA Mutual had a conflict of interest when it withdrew its defense of him in response to Freda's amended malpractice complaint; and (4) violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)) for unreasonable and vexatious conduct.

¶ 11    ISBA Mutual moved to dismiss Canulli's countercomplaint. On October 11, 2013, the circuit court denied the motion with prejudice but stayed the charges "unrelated to the basic coverage issue" until it had ruled on ISBA Mutual's duty to defend.

¶ 12    In April 2014, the circuit court ruled on the parties' cross motions for summary judgment in both declaratory judgment actions. With respect to the action regarding the amended malpractice complaint, the court found that ISBA Mutual had no duty to defend Canulli against the complaint but declined to enter summary judgment in ISBA Mutual's favor in order to allow additional briefing on the issue of whether ISBA Mutual had waived, or was estopped from, denying its duty to defend.

¶ 13    Four years later, on April 24, 2018, the circuit court, having been fully briefed, concluded that ISBA Mutual had neither waived nor was estopped from denying its duty to defend. The court nevertheless declined to enter summary judgment in favor of ISBA Mutual because the malpractice action was still ongoing and it was possible Freda would again amend her complaint to put it back in the ambit of ISBA Mutual's duty to defend.[1]

¶ 14    Freda and Canulli ultimately settled the malpractice complaint in an agreed order dated July 26, 2018. Under the terms of the settlement, Freda paid Canulli $67,500 for his fees and dismissed with prejudice both counts of her amended complaint. On December 17, 2018, the circuit court of Cook County entered summary judgment in favor of ISBA Mutual regarding its duty to defend the amended malpractice complaint. Canulli appealed on January 16, 2019.

¶ 15                                    ANALYSIS

¶ 16    Before turning to the merits of the parties' arguments, we initially address the question of this court's jurisdiction. Whether we have jurisdiction is a question of law that we review *de novo*. *Stasko v. City of Chicago*, 2013 IL App (1st) 120265, ¶ 27. Following briefing in this case, we asked the parties to submit a report on the status of Canulli's counterclaims in the circuit court and were informed that the counterclaims are still pending. Canulli argues that the pendency of his counterclaims deprives us of jurisdiction over this matter. We disagree.

¶ 17    Pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Illinois appellate court decisions are split on whether "Rule 304(a) language"

_____

[1]The court did, however, grant ISBA Mutual's motion for summary judgment in its declaratory judgment action regarding the sanctions motion. Canulli's appeal from that order was disposed of in *Illinois State Bar Ass'n Mutual Insurance Co. v. Canulli*, 2019 IL App (1st) 190141.

is required in order to appeal from a final judgment that resolves a complaint but leaves a counterclaim pending. Compare *Stasko*, 2013 IL App (1st) 120265, ¶ 28, and *Rohr Burg Motors, Inc. v. Kulbarsh*, 2014 IL App (1st) 131664, ¶ 35, with *American Country Insurance Co. v. Chicago Carriage Cab Corp.*, 2012 IL App (1st) 110761, ¶¶ 21-22, and *1350 Lake Shore Associates v. Casalino*, 352 Ill. App. 3d 1027, 1034 (2004).

¶ 18    We believe the instant case is more closely analogous to *American Country Insurance* and *Lake Shore Associates*. In *Lake Shore Associates*, we held that, where a circuit court's order granting a motion for summary judgment "necessarily entailed the disposition" of issues raised in a counterclaim, a Rule 304(a) finding was not necessary to make the summary judgment order appealable. *Lake Shore Associates*, 352 Ill. App. 3d at 1034-35 (citing *Lynch Imports, Ltd. v. Frey*, 200 Ill. App. 3d 781 (1990)); see also *American Country Insurance*, 2012 IL App (1st) 110761, ¶ 22. *Contra Stasko*, 2013 IL App (1st) 120265, ¶ 28 (court's order *denying* plaintiffs' motion for summary judgment but leaving defendants' counterclaim pending was not final and appealable absent Rule 304(a) language).

¶ 19    Here, just as in *Lake Shore Associates*, the court's entry of summary judgment in favor of ISBA Mutual was premised on its finding that ISBA Mutual did not owe Canulli a duty to defend. This necessarily disposed of the counts in Canulli's counterclaim, as they all arose from the proposition that ISBA Mutual *did* owe Canulli a duty to defend. Specifically, the countercomplaint sought a finding that Freda's amended malpractice complaint presented a covered claim and went on to allege breach of contract, breach of special fiduciary duty, and unreasonable and vexatious conduct. All of these allegations are premised on the conclusion that ISBA Mutual had a duty to defend Canulli. When the circuit court found that ISBA Mutual had no such duty, it rendered the claims in Canulli's countercomplaint moot. Accordingly, we conclude that the order entering summary judgment in favor of ISBA Mutual was final notwithstanding the pendency of the countercomplaint and we have jurisdiction to decide this appeal. A contrary finding would serve only to elevate form over substance.

¶ 20    Turning to the merits of the dispute, on appeal, Canulli challenges the entry of summary judgment in favor of ISBA Mutual, arguing that it had a duty to defend him against the allegations in the malpractice complaint. Summary judgment is appropriate only when " 'the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 20 (quoting 735 ILCS 5/2-1005(c) (West 2008)). Where, as here, the parties have filed cross motions for summary judgment, they concede that there is no (material) issue of fact and invite the court to decide the case as a matter of law. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review *de novo* an order granting summary judgment. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 24.

¶ 21    Initially, Canulli argues that Freda's amended complaint presented a covered claim under the policy. In considering whether an insurer owes a duty to defend, we must compare the allegations of the underlying complaint with the policy language. *Economy Fire & Casualty Co. v. Brumfield*, 384 Ill. App. 3d 726, 730 (2008). When undertaking this comparison, we must liberally construe both the language of the complaint and the policy language in favor of coverage. *Erie Insurance Exchange v. Imperial Marble Corp.*, 2011 IL App (3d) 100380, ¶ 16. The duty to defend is very broad (much more so than the duty to indemnify), and an insurer must assume this duty even if the facts in the underlying complaint only potentially fall within

the policy's coverage. *Pekin Insurance Co. v. Centex Homes*, 2017 IL App (1st) 153601, ¶ 52 (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993)). Where the policy language is clear and unambiguous, it must be applied as written. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). However, where the language is ambiguous, it should be construed against the insurer, which drafted the policy. *In re Estate of Striplin*, 347 Ill. App. 3d 700, 702 (2004).

¶ 22    With these principles in mind, we turn to an examination of the relevant policy provisions in this case. Pursuant to the coverage agreement, ISBA Mutual has "the right and duty to defend any suit or arbitration proceeding against the INSURED that seeks DAMAGES arising out of a WRONGFUL ACT even if any of the allegations of the suit or arbitration proceeding are groundless, false or fraudulent."

¶ 23    Both "claim" and "damages" are defined in the policy. A "claim" is defined, in relevant part as "the service of a suit or the initiation of an arbitration proceeding against the INSURED that seeks DAMAGES arising out of a WRONGFUL ACT." And "damages," in turn, are defined as "all sums which an INSURED is legally obligated to pay for any CLAIM to which this policy applies, including judgments, settlements, [and] final arbitration awards." Importantly, damages do *not* include "legal fees, costs or expenses paid or incurred by the claimant, or retained or possessed by the INSURED whether claimed by way of restitution of specific funds, forfeiture, financial loss or otherwise, and injuries which are, in whole or part, a consequence of those fees."

¶ 24    Freda's amended complaint alleged that, "as a direct and proximate result" of Canulli's (1) professional negligence and (2) breach of contract, she had been damaged "in an amount in excess of $100,000 in that she has incurred attorney's fees and costs for useless and unnecessary legal proceedings initiated by *** Canulli."

¶ 25    In its most basic terms, the parties dispute whether the damages Freda is seeking are "legal fees" excluded from the policy's definition of damages. The parties rely heavily on two cases that inform our resolution of this question. See *Continental Casualty Co. v. Law Offices of Melvin James Kaplan*, 345 Ill. App. 3d 34 (2003); *Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775 (2010). In *Kaplan*, relied on by Canulli, the insurer sought a declaration that it had no duty to defend its insured against a legal malpractice complaint. 345 Ill. App. 3d at 36. The underlying complaint alleged, *inter alia*, that the insured represented the claimant in bankruptcy proceedings but negligently failed to obtain a discharge in bankruptcy for the claimant's legal fees that he owed the insured. *Id.* at 37. The insurance policy defined damages much the same way as the policy in this case: damages included "judgments, awards, and settlements," but did not include "legal fees, costs and expenses paid or incurred or charged by [the insured], no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing." (Internal quotation marks omitted.) *Id.* at 36.

¶ 26    On appeal from a circuit court order granting summary judgment in favor of the insurer, the insurer argued that the claimant sought recovery for an injury that was a consequence of legal fees and, as such, was excluded from the policy definition of damages. *Id.* at 39. We disagreed, explaining that "[a]n event is a consequence of another when the former follows the latter as a natural or necessary result." *Id.* We held that, while the damages sought by the claimant may be *measured* by the money he paid to the insurer following the bankruptcy proceedings for services incurred during those proceedings, it "does not mean that the injury

suffered is a consequence of the fees charged." *Id.* at 39-40. Rather, "the injury suffered is a consequence of [the insured's] negligent failure to secure a discharge of [the claimant's] obligation to pay those fees." *Id.* at 40.

¶ 27 *Bertucci* (relied on by ISBA Mutual) likewise concerns an insurance coverage dispute. In that case, the underlying complaint alleged that the insured attorney "retained an excessive amount of attorney fees" from the settlement of a medical malpractice action. *Bertucci*, 399 Ill. App. 3d at 776. The complaint did not allege that the insured improperly handled the lawsuit but instead stated claims for breach of contract, unjust enrichment, conversion, breach of fiduciary duty, fraud, and violation of section 2-1114 of the Code of Civil Procedure (735 ILCS 5/2-1114 (West 1996)), limiting contingent legal fees in medical malpractice actions. *Bertucci*, 399 Ill. App. 3d at 777-78. The circuit court granted the insurer's motion for summary judgment on its declaratory judgment complaint, finding that there was no duty to defend because the suit did not seek "damages" within the meaning of the policy. *Id.* at 779. Just as in *Kaplan* and the instant case, damages were defined as " 'judgments, awards and settlements' " and did not include " 'legal fees, costs and expenses *** charged by the Insured *** and injuries that are consequence of any of the foregoing.' " *Id.* at 777.

¶ 28 On appeal, we affirmed, relying on a pair of out-of-state cases that also dealt with coverage disputes arising out of underlying lawsuits alleging that the attorney-insured improperly withheld a too-large share of settlement proceeds. *Id.* at 781-82, 783-84 (citing *Tana v. Professionals Prototype I Insurance Co.*, 55 Cal. Rptr. 2d 160 (Ct. App. 1996), and *Continental Casualty Co. v. Brady*, 907 P.2d 807 (Idaho 1995)). In both cases, the appellate courts upheld the denial of coverage based on policy provisions that excluded legal fees from the definition of damages. *Id.* Specifically, in *Tana*, the court described the complaint as a "fee dispute, not a malpractice claim," noting that the claimant did not complain of the attorney's performance. *Tana*, 55 Cal. Rptr. 2d at 163. And in *Brady*, the court noted, "[i]f the party is requesting a 'return of fees,' it is immaterial what the actual theory of recovery is" because the policy excluded all claims for a return of fees. *Brady*, 907 P.2d at 810. We likewise held that, because the claimant's suit only alleged impropriety as to the insured's "excessive" retention of a portion of the settlement proceeds, the suit was excluded from coverage under the policy. *Bertucci*, 399 Ill. App. 3d at 784.

¶ 29 Significantly, we also distinguished *Kaplan*, stating

"the alleged negligence in *Kaplan* arose during the core representation of the client ***. *** *In that case, counsel was retained to do a job and was sued for failing to do it properly.* In contrast, it is alleged in Rodriguez v. Bertucci, No. 07-L-06247, that Bertucci was retained to file and litigate a case on Rodriguez's behalf and that he effectively performed those services. Rodriguez has not made any accusations about the legal services Bertucci rendered: she has not criticized his preparation or timely filing of the medical malpractice pleading, she has not questioned his discovery efforts, she has not challenged his choice of experts, she has not taken issue with his case management, and she has not disputed the negotiation efforts that ultimately brought the case to a successful conclusion. While in *Kaplan* the claim arose because the lawyer incorrectly performed the task he was hired to perform in the bankruptcy court, the claim in the lawsuit at issue arose only *after* the lawyer correctly completed the task he was hired to perform." (Emphases added.) *Id.* at 787-88.

¶ 30    We find this case more closely analogous to *Kaplan* than *Bertucci*. Just as in *Kaplan*, the fees sought by Freda in her amended complaint measured her damages for Canulli's allegedly unnecessary work. That is, the injury Freda allegedly suffered was not a consequence of Canulli's *fees* but a consequence of his alleged failure to handle her divorce proceedings expeditiously and appropriately—*i.e.*, his negligence and breach of contract in representing her in the divorce. Just as this court noted in *Bertucci*, discussing *Kaplan*, Canulli was retained to do a job, and his former client sued him for his alleged failure to do it properly. In contrast, the claimant in *Bertucci* claimed injury solely from the insured attorney's retention of an excessive amount of fees from the settlement. The injury in that case was necessarily a consequence of the fees imposed by the insured. Not so here. This was a legal malpractice claim, not a fee dispute. *Contra Tana*, 55 Cal. Rptr. 2d at 163. Freda's complaint stems from the allegedly negligent way Canulli represented her in the divorce, and it is that negligent representation that caused her to expend more money than necessary. This is clearly a dispute about representation. Therefore, we conclude that the damages Freda sought in her amended complaint were not excluded by the policy and so ISBA Mutual had a duty to defend Canulli against her complaint.

¶ 31    We note that ISBA Mutual's decision to cut off Canulli's defense upon receipt of Freda's amended complaint was a drastic measure. Given the broadness of an insurer's duty to defend, discussed above (*supra* ¶ 21), we struggle to understand why ISBA Mutual did not take a more circumspect approach. It could, for example, have continued to defend Canulli under a reservation of rights while ascertaining its obligation. Its failure to do so is incomprehensible.

¶ 32    As a final matter, we address ISBA Mutual's contention that this case is moot given that the Freda malpractice complaint has been settled in Canulli's favor and its duty to defend is extinguished. Canulli admits that ISBA Mutual has no continuing duty to defend but argues that it should still be required to reimburse him for the expenses he incurred in defending himself. Whatever the merits of this argument, it is for the circuit court to decide in the first instance. Because the court (erroneously) found that ISBA Mutual had no duty to defend, it did not reach the claims in Canulli's countercomplaint (see *supra* ¶ 16), which included an allegation that Canulli was entitled to be reimbursed for his expenses in defending himself. On remand, the circuit court can resolve this and the remaining claims in the countercomplaint. Simply stated, pendency of the countercomplaint precludes us from finding that our decision in this case is moot notwithstanding the resolution of Freda's malpractice action.

¶ 33                                                    CONCLUSION

¶ 34    For the foregoing reasons, we reverse the circuit court of Cook County's entry of summary judgment in favor of ISBA Mutual and remand the case for further proceedings in accordance with this opinion.

¶ 35    Reversed and remanded.