2022 IL App (1st) 210013

No. 1-21-0013

Third Division
June 8, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JUDITH O'GARA, Administrator of the Estate of Thomas O'Gara, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) ) | No. 2018 P 000903 |
| v. | ) ) | |
| LAWRENCE O'GARA, MARTIN O'GARA, and MAREN VANDERHAGEN, Administrator of the Estate of Daniel O'Gara, Deceased, | ) ) ) ) ) ) | The Honorable Kent A. Delgado, Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Burke and Ellis concurred in the judgment and opinion.


**OPINION**

¶ 1     The instant appeal arises from a protracted dispute over the distribution of certain assets of

Fr. James O'Gara (Fr. O'Gara) following his death. In the two or so years leading up to Fr.

O'Gara's death, his health declined substantially. As a result, Fr. O'Gara relied on his brother

Lawrence O'Gara (Lawrence) for various types of help, including managing his finances and transporting him to and from medical appointments. During this time, certain changes to the disposition of Fr. O'Gara's assets were made that allegedly resulted in a different distribution scheme than Fr. O'Gara had initially intended. Another brother, Thomas O'Gara (Thomas), who claims he was very close with Fr. O'Gara, began investigating the circumstances surrounding the changes in Fr. O'Gara's distribution plans. Thomas's investigation led him to believe that Fr. O'Gara's distribution plans were improperly altered by Lawrence and Lawrence's counsel. Thomas filed a series of petitions (including discovery and recovery petitions) in an attempt to recover assets from Lawrence that he believed he should have received had Fr. O'Gara's true intentions been honored. Thomas's petitions were denied four times. The fourth denial is the subject of the instant appeal. For the reasons set forth below, we affirm in part and dismiss in part.

¶ 2                                    I. BACKGROUND

¶ 3       The instant appeal arises from a dispute among certain O'Gara brothers regarding the distribution of the assets of their brother, Fr. O'Gara, following his death. We set forth only those facts germane to the instant appeal.

¶ 4       The plaintiff-appellant in this case is Judith O'Gara (plaintiff), widow of Thomas and administrator of his estate. According to plaintiff's brief, Thomas was very close with his brother Fr. O'Gara throughout his life. In the late 1980s and early 1990s, Fr. O'Gara purchased 18 treasury bonds, 10 of which were jointly titled with Thomas and 3 of which named Thomas as payee upon the death of Fr. O'Gara.

¶ 5       In 2012, Fr. O'Gara's health began to decline, being first diagnosed with Parkinson's disease and later with terminal liver cancer. It was also around 2012 that, according to plaintiff,

another brother, Lawrence, began to become involved in Fr. O'Gara's finances. At that time, Fr. O'Gara executed an Illinois Department of Revenue power of attorney naming Lawrence as his agent. Lawrence assisted Fr. O'Gara with a tax audit and helped him prepare tax returns.

¶ 6    Around 2013, Fr. O'Gara became too ill to use public transportation. He began to rely heavily on Lawrence for transportation to and from medical appointments. At the end of 2013, Fr. O'Gara was hospitalized with pneumonia twice. In January 2014, he was diagnosed with terminal liver cancer and was told he had less than a year to live. According to plaintiff, this is when Lawrence became heavily involved in Fr. O'Gara's finances. The following account of events—related to plaintiff's allegation that Lawrence and his counsel improperly changed beneficiary designations and titling of assets in favor of Lawrence and two other O'Gara brothers—is taken from plaintiff's brief. Defendants do not dispute these events in their brief.

¶ 7    In February 2014, Lawrence drove Fr. O'Gara to a Chase bank branch, where Fr. O'Gara executed forms changing the titling of the accounts from solely in Fr. O'Gara's name to jointly in Lawrence's and Fr. O'Gara's names. In March 2014, Lawrence took Fr. O'Gara to a Northern Trust branch and withdrew $75,000 from a Northern Trust account in the form of a cashier's check payable to Fr. O'Gara. The next day, Lawrence filled out a Chase deposit slip to transfer the $75,000 into one of the Chase bank accounts he held jointly with Fr. O'Gara. Lawrence endorsed the check for deposit by signing Fr. O'Gara's name.

¶ 8    In April 2014, Fr. O'Gara moved into a nursing facility. Around this time, Lawrence informed Thomas and Martin O'Gara (another brother) that Fr. O'Gara wanted to change ownership of the Northern Trust account by removing Thomas and Martin as joint owners and instead naming all four surviving brothers (Lawrence, Thomas, Martin, and Daniel) as equal payees upon the death of Fr. O'Gara. Lawrence indicated he was making similar changes to

Fr. O'Gara's other significant deposit accounts. Thomas and Martin agreed to relinquish their joint ownership of the Northern Trust account. At this time, Fr. O'Gara indicated that the disposition plan for his other financial assets in favor of Thomas and Martin would remain unchanged. These included a life insurance policy, 401(k) account, and treasury bonds.

¶ 9 Around this time, Fr. O'Gara, Thomas, and Lawrence discussed Fr. O'Gara's will. Fr. O'Gara indicated that he wanted to execute a will naming his four surviving brothers as equal legatees of his probate estate, with Daniel, Lawrence, and Thomas acting as co-executors of the will. Plaintiff claims that, without informing Thomas or Fr. O'Gara, Lawrence approached Dorothy Johnson (Johnson), Lawrence's friend, who is a lawyer, to prepare the will. Lawrence instructed Johnson to name Lawrence as sole executor and to request independent administration, as well as a the financial and property power of attorney for Fr. O'Gara's estate. On April 15, 2014, Lawrence drove Fr. O'Gara to Johnson's office to sign the documents, but Fr. O'Gara was too ill to leave the car. Johnson brought the documents outside, and Fr. O'Gara signed them at the curb. Fr. O'Gara never notified Thomas that he had changed his plan to name the three brothers as co-executors or that he had executed a power of attorney. Thomas did not learn about these changes until Fr. O'Gara's death.

¶ 10 On or around April 21, 2014, Lawrence and Thomas had lunch together, and Lawrence told Thomas that they needed to visit the safe deposit box in which Fr. O'Gara kept the treasury bonds. Lawrence told Thomas they needed to visit the box to remove potentially compromising material that a priest should not own.[1] During the visit, Lawrence removed the treasury bond certificates, saying he would make copies and return them to the box. To that end, Thomas

---

[1] It is unclear what the purportedly compromising material was, but there was apparently nothing compromising discovered in the safe deposit box.

added Lawrence as a co-owner of the box. Lawrence did not return the treasury bonds. Instead, four days later, Lawrence drove Fr. O'Gara to Northern Trust to endorse the bonds, which allowed Lawrence to redeem them. Lawrence then deposited the proceeds into the Northern Trust account. Fr. O'Gara never informed Thomas of his intention to redeem the bonds.

¶ 11    In or about May 2014, Lawrence or Johnson executed paperwork to name Daniel, Thomas, Lawrence, and Martin as the primary beneficiaries of Fr. O'Gara's 401(k) plan in equal shares. Prior to this change, Thomas was named as the primary beneficiary, and Martin was named as the contingent beneficiary. Fr. O'Gara never informed Thomas about the change in beneficiary designation "despite Thomas visiting Fr. O'Gara regularly at the nursing home."

¶ 12    On August 7, 2014, Fr. O'Gara died. On September 30, 2014, Fr. O'Gara's will was admitted to probate, and Lawrence was appointed executor in Fr. O'Gara's estate. Fr. O'Gara's assets were distributed among the O'Gara brothers. According to plaintiff, Thomas would have received more, and Lawrence would have received less, had Fr. O'Gara's true intentions regarding the disposition of his assets been honored.

¶ 13    Unhappy with the distribution of Fr. O'Gara's assets, Thomas, a licensed attorney in the state of Illinois, petitioned the trial court three times attempting to recover some of those assets. On March 15, 2016, Thomas filed a petition for discovery in the matter of the Estate of James O'Gara against several petitioners, including Lawrence. Lawrence also filed a petition for discovery, naming Thomas as respondent. On February 8, 2017, the trial court entered an order requiring both petitions to be converted into petitions for recovery by March 8, 2017. The order specified that a failure to do so would result in a dismissal of the petitions. Thomas did not file petition for recovery on or before March 8, 2017.

¶ 14    On April 24, 2017, without leave of court and without including the requisite Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) (Rule 183) motion,[2] Thomas filed his first petition for recovery against Lawrence. The trial court struck Thomas's notice, motion, petition, and response as untimely and improperly before the court.

¶ 15    After the trial court struck the first petition, Thomas filed another petition, again without including a Rule 183 motion. The trial court again struck the motion and petition as untimely.

¶ 16    In January 2018, Thomas died. On March 8, 2018, plaintiff (Thomas's widow) filed a motion for leave to file a third petition for recovery in the matter of the Estate of James O'Gara. On March 14, 2018, the trial court ordered "counsel for Thomas O'Gara [to] file with good cause shown any petition for citation to issue as no petition of issuance of citation to recover assets is pending." Nothing in the record indicates that a Rule 183 motion for good cause was ever filed.

¶ 17    On February 7, 2018, a new matter was opened in probate court for the Estate of Thomas O'Gara. Plaintiff was named administrator. It is this case that is the subject of the instant appeal.

¶ 18    On April 15, 2019, plaintiff (Thomas's widow) filed her verified petition for issuance of recovery citation pursuant to section 16-1 of the Probate Act of 1975 (755 ILCS 5/16-1 (West 2016)). This was the fourth filing of a petition for recovery against Lawrence. In that petition, plaintiff made essentially the same factual allegations as in her appellate brief. The petition included 10 counts: count I (undue influence – treasury bond redemptions) against Lawrence; count II (undue influence – change of 401(k) plan beneficiaries) against Lawrence; count III

---

[2]"The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." Ill. S. Ct. R. 183 (eff. Feb. 16, 2011).

(intentional interference – 401(k) plan beneficiary designation) against Lawrence "in the alternative;" count IV (unjust enrichment – treasury bond redemptions and 401(k) plan beneficiaries) against Martin O'Gara and Maren Vanderhagen as Executor of the Estate of Daniel O'Gara; count V (conversion – Chase accounts) against Lawrence; count VI (intentional interference with an inheritance expectancy – Chase accounts) against Lawrence; count VII (unjust enrichment – Chase accounts) against Lawrence; count VIII (breach of fiduciary duty – Chase accounts) against Lawrence; count IX (intentional interference – transfer of $75,000 from Northern Trust to Chase accounts) against Lawrence; and count X (inventory and accounting under the financial and property power of attorney) against Lawrence as power of attorney agent.

¶ 19     On October 31, 2019, Lawrence filed a 2-619.1 motion to strike and dismiss plaintiff's petition under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2018)). Lawrence argued first that paragraphs 48-59, 61-62, and 64-65 of the petition should be stricken because they describe the circumstances surrounding the creation of Fr. O'Gara's will, which are irrelevant because Thomas never contested the will. Second, Lawrence argued that the trial court lacks jurisdiction to consider counts II and III. Third, Lawrence argued that all counts directed against Lawrence are barred under the doctrine of laches. Fourth, Lawrence argued that, assuming the court has jurisdiction to consider counts II and III, they should be dismissed because they are barred under the doctrine of equitable estoppel. Fifth, Lawrence argued that counts III, VI, and IX should be dismissed because they are barred under the adequate relief doctrine. Sixth and finally, Lawrence argued that all counts directed against him should be dismissed because they are barred under the doctrine of collateral estoppel.

¶ 20    On November 10, 2020, the trial court issued an order on plaintiff's fourth petition. As relevant to the instant appeal, the court struck paragraphs 48-59, 61-62, and 64-65 as immaterial and irrelevant; it dismissed counts II and III under the doctrine of equitable estoppel; and it dismissed all counts under the doctrine of collateral estoppel. The trial court's November 10, 2020, order is the first of two orders being challenged in the instant appeal.

¶ 21    The record indicates that plaintiff's counsel attempted to file a motion to reconsider the November 10, 2020, order on December 10, 2020, at 11:52 p.m. The initial filing was rejected due to counsel's failure to select the correct filing type and pay the accompanying filing fee. The filing was not accepted until December 11, 2020, which was past the 30-day period during which a party may file a postjudgment motion under section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2012)).

¶ 22    Attempting to cure the untimeliness of her motion to reconsider, plaintiff filed a *nunc pro tunc* motion under Illinois Supreme Court Rule 9(d)(2) (eff. Aug. 14, 2020) (Rule 9(d)(2)) on December 16, 2020, to backdate the filing date from December 11, 2020, to December 10, 2020. Rule 9(d)(2) reads: "If a document is rejected by the clerk and is therefore untimely, the filing party may seek appropriate relief from the court, upon good cause shown." Ill. S. Ct. R. 9(d)(2) (eff. Aug. 14, 2020).

¶ 23    At the January 7, 2021, hearing on plaintiff's motion, the trial court found that its jurisdiction ended on December 10. Nonetheless, it addressed the substance of plaintiff's motion, finding that plaintiff had not shown good cause to support her Rule 9(d)(2) motion. Accordingly, the trial court denied plaintiff's motion. The trial court's January 7, 2021, order is the second of two orders being challenged in the instant appeal.

¶ 24    Plaintiff filed her motion for leave to file a late notice of appeal on January 8, 2021, challenging the trial court's November 10, 2020, order and its January 7, 2021, order. On January 21, 2021, this court granted that motion. On January 22, 2021, plaintiff filed her notice of appeal.

¶ 25                              II. ANALYSIS

¶ 26    On appeal, plaintiff challenges two orders of the trial court: its November 10, 2020, order and its January 7, 2021, order. First, regarding the November 10, 2020, order, plaintiff argues that the trial court erred in striking paragraphs 48-59, 61-62, and 64-65 of plaintiff's petition; that the trial court's decision to dismiss counts II and III of plaintiff's petition under the doctrine of equitable estoppel was against the manifest weight of the evidence; and that the trial court erred in dismissing all counts of plaintiff's petition under the doctrine of collateral estoppel. In response, defendants first contend that this court lacks jurisdiction to consider plaintiff's appeal because plaintiff failed to file a timely notice of appeal or a timely post-trial motion that could serve to extend the filing deadline for the notice of appeal. In the alternative, defendants argue that the trial correct properly struck the paragraphs from the petition and that it correctly applied the doctrines of collateral and equitable estoppel to dismiss plaintiff's petition.

¶ 27    Second, regarding the January 7, 2021, order, plaintiff argues that the trial court abused its discretion in denying her Rule 9(d)(2) motion to effectively change the date of her untimely filing of her motion to reconsider the November 10, 2021, order. In response, defendants argue that the trial court did not have jurisdiction to hear plaintiff's Rule 9(d)(2) motion because its jurisdiction had ended, since plaintiff had failed to file a timely motion to reconsider.

¶ 28                          A. Appellate Jurisdiction

¶ 29    As a threshold matter, we must first determine whether this court has jurisdiction to address the merits of the parties' arguments. It is our duty to determine whether we have jurisdiction, regardless of whether the parties raise the issue on appeal. *Mayle v. Urban Realty Works, LLC*, 2020 IL App (1st) 191018, ¶ 36. Whether we have jurisdiction is a question of law that we review *de novo*. *Illinois State Bar Ass'n Mutual Insurance Co. v. Canulli*, 2020 IL App (1st) 190142, ¶ 16. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Condon & Cook, LLC v. Mavrakis*, 2016 IL App (1st) 151923, ¶ 55.

¶ 30    Generally, appellate jurisdiction exists only to review final orders. *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.* 182 Ill. 2d 6, 7 (1998). An order is final if it disposes the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof. *D'Agostino v. Lynch*, 382 Ill. App. 3d 639, 641 (2008). Without a properly filed notice of appeal, the appellate court lacks jurisdiction over the matter and is required to dismiss the appeal. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). "A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal." *Pappas*, 242 Ill. 2d at 176.

¶ 31                                    1. The November 10, 2020, Order

¶ 32    We address first the question of whether we have jurisdiction to review the trial court's November 10, 2020, order. As noted above, defendants contend that plaintiff's notice of appeal was untimely and that we must therefore dismiss the appeal. Rule 303(a)(1) governs the timing of the notice of appeal:

> "The notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30

days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order, irrespective of whether the circuit court had entered a series of final orders that were modified pursuant to postjudgment motions. A judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a). A notice of appeal filed after the court announces a decision, but before the entry of the judgment or order, is treated as filed on the date of and after the entry of the judgment or order. The notice of appeal may be filed by any party or by any attorney representing the party appealing, regardless of whether that attorney has filed an appearance in the circuit court case being appealed." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 33        Under the first part of Rule 303(a)(1), plaintiff's notice would have been due within 30 days of the November 10, 2020, order, which would have been December 10. However, plaintiff did not file her notice of appeal until January 8, 2021, which was well past the December 10 deadline. Therefore, under the first part of Rule 303(a)(1), plaintiff's filing is untimely.

¶ 34        The second part of Rule 303(a)(1) allows plaintiff to file a notice of appeal within 30 days after an order disposing of a postjudgment motion, if such postjudgment motion was timely filed. Under section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2012)), postjudgment motions are timely if filed within 30 days after the entry of the judgment at issue. Thus, if plaintiff filed her motion to reconsider within 30 days of November 10, 2020, then her January 8, 2021, notice of appeal would be considered timely. The question before us now is: Did plaintiff file a timely postjudgment motion challenging the court's November 10, 2020, order?

¶ 35    Rule 9(d)(2) provides that "[i]f a document is rejected by the clerk and is therefore untimely, the filing party may seek appropriate relief from the court, upon good cause shown." Ill. S. Ct. R. 9(d)(2) (eff. Aug. 14, 2020). Thus, to determine whether plaintiff's December 11, 2020, motion to reconsider should be backdated to December 10, 2020 (thereby curing both its untimeliness and the untimeliness of the notice of appeal), we must determine whether plaintiff has shown good cause for her untimely motion to reconsider.

¶ 36    The record indicates that plaintiff attempted to e-file her motion to reconsider the November 10, 2020, order at 11:52 p.m. on December 10, 2020. Due to apparent confusion on the part of plaintiff's counsel, the motion was not filed until December 11, 2020, which is past the 30-day window for filing a postjudgment motion. As noted above, plaintiff subsequently filed a Rule 9(d)(2) motion *nunc pro tunc* to backdate the untimely-filed motion to reconsider to December 10, alleging an "honest mistake."

¶ 37    Plaintiff's counsel argues that his late filing should be excused because he was unfamiliar with the e-filing system. The e-filing system has been functional since at least 2018. According to plaintiff's counsel's affidavit submitted in support of plaintiff's 9(d)(2) motion, plaintiff's counsel knew that it would be his first time e-filing.[3] With that knowledge, plaintiff's counsel could have taken steps during the 29 days prior to the deadline to familiarize himself with the e-filing system. Knowing that he was unfamiliar with said system, he nonetheless waited until 11:52 p.m. of the day the filing was due to even *attempt* to file it. The filing was rejected

_____

[3]*Nunc pro tunc* orders must be based on "definite and precise evidence in the record" and "without reliance upon the memory of the judge or any other person," and they "cannot be based upon *ex parte* affidavits or testimony." *Beck v. Stepp*, 144 Ill. 2d 232, 239 (1991). Thus, plaintiff's counsel's submission of his affidavit is of little value to plaintiff's Rule 9(d)(2) motion.

because plaintiff's counsel selected the incorrect filing description and failed to pay the filing fee.

¶ 38    Furthermore, *nunc pro tunc* motions are intended to remedy clerical errors: "If, however, there is proper evidence of a clerical error, then the court may at any time use a *nunc pro tunc* order to correct the mistake." *Jayko v. Fraczek*, 2012 IL App (1st) 103665, ¶ 29; see *Johnson v. First National Bank of Park Ridge*, 123 Ill. App. 3d 823, 826-27 (1984). This was not a clerical error; it was an entirely avoidable attorney error.

¶ 39    Plaintiff cites the *Davis* case in support of his argument that his Rule 9(d)(2) motion (to backdate the filing date of her motion to reconsider) should be granted. In *Davis*, plaintiffs filed their complaint at 10:32 a.m. on the last day of the relevant statute of limitations period. *Davis v. Village of Maywood*, 2020 IL App (1st) 191011, ¶ 5. However, it was rejected four days later by the clerk because plaintiff's counsel had failed to fill in the attorney code in the case cross reference number field, as required by the e-filing system. *Davis*, 2020 IL App (1st) 191011, ¶ 6. The defendant filed a motion to dismiss, arguing that the complaint was filed after the relevant statute of limitations had lapsed. *Davis*, 2020 IL App (1st) 191011, ¶ 8. Plaintiffs responded to the substance of defendant's motion and filed a separate motion, in which they cited Rule 9(d)(2), arguing there was good cause for the trial court to excuse their untimely filing of the complaint. *Davis*, 2020 IL App (1st) 191011, ¶ 8. After written and oral arguments, the trial court resolved both motions in defendant's favor, reasoning that the filing date of the complaint was the day on which it was accepted by the clerk, which was four days after the statute of limitations had lapsed. *Davis*, 2020 IL App (1st) 191011, ¶ 9.

¶ 40    On appeal, the *Davis* court reversed the trial court's decision, concluding that plaintiffs had shown good cause for the untimely filing. *Davis*, 2020 IL App (1st) 191011, ¶ 20. In reaching

its decision, the court noted that the filing issue occurred in the first two weeks of Cook County's implementation of the e-filing system. *Davis*, 2020 IL App (1st) 191011, ¶ 21. As such, both clerks and litigants were unfamiliar with the new system, and there were bound to be questions as clerks and litigation counsel became accustomed to the new and very different method of preparing, submitting, and processing legal documents. *Davis*, 2020 IL App (1st) 191011, ¶ 21. The *Davis* court also noted that the submission that was ultimately accepted by the clerk four days later was identical to the plaintiffs' initial submission, as the only change was to the e-filing envelope. *Davis*, 2020 IL App (1st) 191011, ¶ 22. The *Davis* court also distinguished the matter before it from another hypothetical situation: "[h]ad the same error occurred at 11:59 p.m. instead of 10:32 a.m., we would suspect that haste to submit the document by midnight played a part." *Davis*, 2020 IL App (1st) 191011, ¶ 32. However, "[c]ounsel's midmorning attention to his task *** is a fact that *** weighs, slightly, in favor of granting the motion." *Davis*, 2020 IL App (1st) 191011, ¶ 32. The *Davis* court further distinguished the matter before it from a prior matter, the *Peraino* case, in which "[a] paralegal first attempted at 11:58 p.m. to upload [a] motion to reconsider and did not succeed until 12:04 a.m., [the] motion was not timely filed due to user error." *Davis*, 2020 IL App (1st) 191011, ¶ 32 (citing *Peraino v. County of Winnebago*, 2018 IL App (2d) 170368).

¶ 41    The case at bar is distinguishable from *Davis*. First, the e-filing system at issue in the instant appeal had been functional for years by the time plaintiff's counsel attempted to use it. Unlike in *Davis*, in which the new filing system had just been adopted, this is not a situation in which the implementation of an entirely novel filing system may reasonably be expected to cause some confusion as clerks and litigants get accustomed to it. This factor does not weigh in favor of a showing of good cause. Second, rather than omitting a number on the filing as in *Davis*,

14

plaintiff here failed to select the correct filing and pay the filing fee. However, the record does not indicate that the filing that was ultimately accepted (albeit late) differed substantively from the one that plaintiff attempted to file in the nick of time. At best, this factor weighs slightly in plaintiff's favor. Third, the instant appeal involves precisely the "midnight filing" admonished by the *Davis* court and disallowed in the *Peraino* case. Last-minute filings are insufficient to establish good cause under Rule 9(d)(2). This factor does not weigh in favor of a good cause showing.

¶ 42    Based on these facts, we find that plaintiff has failed to demonstrate good cause to excuse the untimely filing of her motion to reconsider. Had plaintiff's counsel exercised prudence and familiarized himself with the e-filing system in the 29 days before the due date, or at the very least attempted to file before 11:52 p.m. on the due date, we may have arrived at a different conclusion. However, plaintiff's counsel's predicament was entirely avoidable in the case at bar. Having failed to demonstrate good cause for the untimely filing, the deadline for the notice to appeal as it relates to the November 10, 2020, order was December 10, 2020, which means that plaintiff's notice of appeal filed on January 8, 2021, is untimely. Therefore, we lack appellate jurisdiction as it relates to the November 10, 2020, order.

Because we lack the appellate jurisdiction to review the trial court's November 10, 2020, order, we do not reach the merits of the parties' substantive arguments regarding that order. Accordingly, plaintiff's appeal of the November 10, 2020, order is dismissed in its entirety.

¶ 43                                    2. The January 7, 2021, Order

¶ 44    We turn now to the question of whether we have appellate jurisdiction to review the trial court's January 7, 2021, order. Plaintiff filed her notice of appeal on January 22, 2021, so her appeal of this order is timely. The appellate court has jurisdiction to review a trial court's

adjudication of a motion filed pursuant to Rule 9(d)(2). *Davis*, 2020 IL App (1st) 191011, ¶ 2. Because plaintiff timely filed a proper notice of appeal of the January 7, 2021, order, we have jurisdiction to review it.

¶ 45                          B. The January 7, 2021, Order on the Merits

¶ 46        Having determined that we have appellate jurisdiction to review the trial court's January 7, 2021, order, we turn now to the merits of the parties' arguments regarding said order. As an initial matter, defendants contend that the trial court lacked jurisdiction to consider plaintiff's Rule 9(d)(2) motion because it was filed after the trial court lost jurisdiction over the matter. We disagree. Such a narrow reading of would effectively disallow any *nunc pro tunc* motion to be filed to cure an untimely postjudgment motion. This defies common sense and stands contrary to settled case law.

¶ 47        Generally, a court loses jurisdiction to review its own final order or judgment after the expiration of 30 days; "[i]f, however, there is proper evidence of a clerical error, then the court may *at any time* use a *nunc pro tunc* order to correct the mistake." (Emphasis added.) *Jayko*, 2012 IL App (1st) 103665, ¶ 29; see *Johnson*, 123 Ill. App. 3d 823, 826-27 (1984). Because a court may correct clerical errors *at any time*, it can do so outside of the usual period of time during which it retains jurisdiction over a given matter.

¶ 48        Having determined that the trial court had jurisdiction to consider plaintiff's Rule 9(d)(2) motion, the standard of review on appeal is abuse of discretion. *Davis*, 2020 IL App (1st) 191011, ¶ 13. However, we need not engage in further analysis of the trial court decision because in determining whether we have appellate jurisdiction to review the November 10 order above, we were required to determine whether plaintiff's motion to reconsider should have been backdated from December 11, 2020, to December 10, 2020, curing its untimeliness.

We found that plaintiff had not shown good cause for her untimely filing, as required by Rule 9(d)(2). Because we reached the same conclusion as the trial court in our above analysis that we were required to perform in addressing the question of jurisdiction, we cannot say that the trial court abused its discretion in finding that plaintiff had not shown good cause for her untimely filing. Accordingly, we affirm the trial court's January 7, 2021, order.

¶ 49                                III. CONCLUSION

¶ 50     Because we lack appellate jurisdiction to review the trial court's November 10, 2020, order, we do not reach the merits of the parties' substantive arguments regarding that order. Accordingly, plaintiff's appeal of the November 10, 2020, order is dismissed in its entirety.

¶ 51     Because the trial court did not abuse its discretion in finding that good cause was not shown to excuse the untimeliness of plaintiff's filing of her motion to reconsider the November 10, 2020, order, the trial court's January 7, 2021, order is affirmed.

¶ 52     Affirmed in part and dismissed in part.

---

2022 IL App (1st) 210013

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-P-000903; the Hon. Kent A. Delgado, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Daniel S. Ebner, of Prather Ebner LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Lawrence D. O'Gara, of Chicago, and Lynn D. Dowd and Jennifer L. Barron, of Law Offices of Lynn D. Dowd, of Naperville, for appellees. |

---